HARRIS, Plaintiff in error, v. STATE, Defendant in error.

*December 3, 1965—January 4, 1966.*

480

For the plaintiff in error there was a brief by *Peter W. Bunde,* attorney, and *Norman L. Winn* of counsel, both of Milwaukee, and oral argument by *Mr. Bunde.*

For the defendant in error the cause was argued by *Paul T. Miller,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Hugh R. O'Connell,* district attorney.

CURRIE, C. J.   Defendant attacks the judgment of conviction on these three grounds:

(1)   He was placed in double jeopardy.

(2)   He was denied due process of law because he was interrogated by the police without being advised of his right to remain silent and of his right to counsel.

(3)   There is insufficient credible evidence to sustain his conviction.

### Double Jeopardy.

Defendant's claim of double jeopardy is premised upon the contention that the trial court made a finding of fact that defendant was not guilty at the conclusion of defendant's testimony given at the time it had under consideration the acceptance of defendant's plea of guilty.  The statements relied upon by defendant took place in a colloquy between the court, assistant district

attorney Surges, and defendant's counsel, Parrish. This colloquy was as follows:

"MR. SURGES: If the Court please, I don't think this man fully understood what he was doing when he pled guilty to the charge.

"THE COURT: Well, he did, but on his statement as to what transpired, *if that is true, then he is not guilty.* So it is a plea of guilty which we sometimes see here, which we will not permit to stand under one corner of his mouth and not guilty on the other corner of his mouth when he testifies.

"So I think what we should do here is change the plea to not guilty, if he wants to try it before the Court, continue the trial, then the State can reopen and proceed farther, so can Mr. Parrish.

"MR. PARRISH: I have no objection, your Honor.

"THE COURT: I mean I can't let the record stand like this, obviously. *On his statement he is not guilty.* Correct, gentlemen?" (Emphasis supplied.)

We reject the contention that the trial court made an express finding of not guilty. The trial court's two italicized statements are interpreted as being equivalent to saying, *if defendant is to be believed,* then he is not guilty. The trial court at that time did not pass on the credibility of defendant's testimony so as to remove this qualification.

Furthermore, defendant's testimony had not been taken for the purpose of determining defendant's guilt of the offense charged, but solely for the limited objective of determining whether he had understandingly entered his plea of guilty. Thus there was no trial had on the merits until the plea was changed to one of not guilty. The evidence thereafter presented was not in any sense a new trial but part of one continuous prosecution.[1]

---

[1] For a statement of this principle of continuity applicable to problems of double jeopardy, see *State v. Schmear* (1965), 28 Wis. (2d) 126, 135 N. W. (2d) 842.

*Failure of Police to Advise of Constitutional Rights.*

At the trial police officers testified with respect to what defendant had told them when they questioned him. The only damaging answer given by defendant was his denial at first that he had any knowledge of the cashing of the check. His other answers to questions given after arrest were entirely consistent with his testimony given at trial. No confession or admission of guilt was made by defendant.

Defendant contends that it was a denial of due process for the police to have questioned him without first advising him of his right to remain silent and that he was entitled to have counsel.

This court has never adopted a hard-and-fast rule that an accused must be informed of his constitutional right not to incriminate himself before he can be interrogated by law-enforcement officers.[2] We, however, in *State v. Bronston* [3] commended the practice of law-enforcement officers informing arrested persons accused of crime of their constitutional right to remain silent before questioning them. This recommendation was reiterated in *Holt v. State* [4] accompanied by the statement, ". . . that failure to do so will not render the product of the interrogation inadmissible unless it appears that the defendant by reason of his education, intelligence, or other circumstances has been imposed upon."

In the instant case defendant was thirty-one years of age, his education had extended into the tenth grade, and

[2] *Neuenfeldt v. State,* ante, p. 20, 138 N. W. (2d) 252; *Holt v. State* (1962), 17 Wis. (2d) 468, 479, 117 N. W. (2d) 626; *State v. Bronston* (1959), 7 Wis. (2d) 627, 641, 97 N. W. (2d) 504. See also *Link v. State* (1935), 217 Wis. 582, 586, 259 N. W. 428, 261 N. W. 416; and *State v. Whatley* (1933), 210 Wis. 157, 168, 245 N. W. 93.

[3] *Supra,* footnote 2, at page 641.

[4] *Supra,* footnote 2, at page 480.

he had three years' experience serving in the air force. He had a prior criminal record which undoubtedly apprised him of his right not to answer questions put to him by the police. This is manifested by his refusal to answer certain questions. Under the "totality of circumstances" test we find no denial of due process in the failure of the police to have advised him of his right to remain silent before they interrogated him.

The failure of the police to have informed him of right to counsel presents an *Escobedo Case* [5] problem. In the recent case of *Neuenfeldt v. State* [6] we adhered to our prior position that we would not extend *Escobedo* beyond its own peculiar facts.[7] As we noted by footnote in *Neuenfeldt,* the United States supreme court recently accepted jurisdiction in four cases raising *Escobedo* problems. We decline to anticipate what guiding principles will ultimately be announced by that court in those cases. Therefore, we find no denial of constitutional rights predicated upon failure of the police to say anything about right to counsel prior to questioning defendant.

### Credible Evidence to Sustain Conviction.

No motion for acquittal was made at the conclusion of the state's case, and, therefore, the evidence adduced by defendant as well as by the state is to be considered in passing on the issue of the sufficiency of the evidence to convict.

Sec. 943.38 (2), Stats., under which defendant was charged provides:

---

[5] *Escobedo v. Illinois* (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. (2d) 977.

[6] *Supra,* footnote 2.

[7] See *State ex rel. Goodchild v. Burke* (1965), 27 Wis. (2d) 244, 133 N. W. (2d) 753; *Browne v. State* (1964), 24 Wis. (2d) 491, 129 N. W. (2d) 175, 131 N. W. (2d) 169; certiorari denied, 379 U. S. 1004, 85 Sup. Ct. 730, 13 L. Ed. (2d) 706; rehearing denied, 380 U. S. 959, 85 Sup. Ct. 1094, 13 L. Ed. (2d) 977.

"Whoever utters as genuine or possesses with intent to utter as false or as genuine any forged writing or object mentioned in sub. (1), knowing it to have been thus falsely made or altered, may be fined or imprisoned or both as provided in said subsection."

Defendant centers his attack upon the fact that there was no direct evidence adduced that he knew that the signature of the payee Sutton was forged at the time defendant negotiated the check. One of the detectives testified that the police document examiner had concluded that this forged signature was not in the handwriting of defendant.

In addition to Bell's direct contradiction of defendant's story as to how defendant had come into possession of the check, there are other factors which would warrant the trial court in concluding that defendant's testimony was a fabrication. Defendant possessed no means of transportation of his own to go from the Ruth tavern to the Keller Liquor Store, get the liquor and transport it back to the tavern. He testified that upon Bell's sending him on this errand he stepped outside the tavern and saw a stranger in a car about to pull away from the curb. Defendant then asked this stranger to take him to Keller's and return to the Ruth tavern with the liquor. The stranger agreed to do so. Upon returning to the tavern defendant paid this stranger either seventy-five or fifty cents, but defendant did not ask Bell for reimbursement of this expenditure. Neither did defendant receive any remuneration from Bell for performing the errand.

It was within the province of the trial court to completely disbelieve defendant. Proceeding on the premise that defendant's story as to how he acquired the check was not true, it is a reasonable inference that he would not have fabricated such a story if he had acquired the check innocently. Other significant facts are these: The check was dated June 26, 1963, and had been mailed to Sutton, but Sutton never received it. The very next

day defendant negotiated the check at Keller's. Sutton testified he had known defendant since May, 1963. Defendant also knew where Sutton lived as defendant had been seen two years before in the building where Sutton resided.

All of this gives rise to a reasonable inference that defendant had not acquired the check innocently and must have known that Sutton's signature on the back was a forgery.

In *State v. Johnson* [8] this court made it clear that the approach it takes when reviewing a trial court's determination of guilt based on circumstantial evidence is no different than when a determination is based on direct evidence. We quote from that opinion as follows:

"The trial judge found he was convinced of the defendant's guilt beyond a reasonable doubt. On this appeal it is our duty to determine whether the circumstantial evidence is sufficient to sustain the finding of the trial court. *State v. Schweider* (1959), 5 Wis. (2d) 627, 94 N. W. (2d) 154. This court does not retry the case on the facts in the record to determine if each of its members is convinced of the defendant's guilt beyond a reasonable doubt. An appellate court cannot function as a trial court or as a jury. Its duty and right is to determine whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt. *State v. Hanks* (1948), 252 Wis. 414, 31 N. W. (2d) 596; *Parke v. State* (1931), 204 Wis. 443, 235 N. W. 775, and cases cited therein. See also *State v. John*, ante, p. 1, 103 N. W. (2d) 304. The rule is no different when the trial court is the trier of the facts. *State v. Evjue* (1949), 254 Wis. 581, 37 N. W. (2d) 50." [9]

[8] (1960), 11 Wis. (2d) 130, 104 N. W. (2d) 379.

[9] Id. at page 137. This is in accord with the approach taken upon review of a determination based on direct evidence. *Gauthier v. State* (1965), 28 Wis. (2d) 412, 416, 137 N. W. (2d) 101; *State v. Waters* (1965), 28 Wis. (2d) 148, 153, 135 N. W. (2d) 768; See *Hemmis v. State* (1964), 24 Wis. (2d) 346, 353, 354, 129 N. W. (2d) 209, for an affirmance of a trial court's finding of guilt based entirely on circumstantial evidence; *Johnson* was quoted therein with approval.

We conclude that there was sufficient credible evidence to sustain the judgment of conviction.

*By the Court.*—Judgment affirmed.