GREENWALD, Plaintiff in Error, v. STATE, Defendant in Error.

*April 14—May 9, 1967.*

148

For the plaintiff in error there was a brief and oral argument by *Leonard S. Zubrensky* of Milwaukee.

For the defendant in error the cause was argued by *Robert E. Sutton,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney.

CURRIE, C. J. The following issues were presented by the writ of error:

1. Were the statements and confession elicited from the defendant as a result of interrogation, freely and voluntarily given in accordance with the standards required by the Fifth, Sixth and Fourteenth amendments of the United States constitution?

2. Where a single investigation discloses multiple charges against a defendant, a criminal prosecution is instituted against that defendant upon one charge and the defendant successfully defends that charge, is the

state thereby estopped from subsequently instituting prosecution against the defendant on the other charges?

### Admissibility of Defendant's Statements and Confession.

At the conclusion of the pretrial hearing to determine the voluntariness of defendant's statements and confession made pursuant to police interrogation the circuit court made detailed findings of fact and conclusions of law in accord with the mandate in *State ex rel. Goodchild v. Burke* [1] and concluded under the "totality of circumstances" test that:

". . . any statements against interest made by this defendant on any occasion referred to on January 20th or January 21st, 1965, were free and voluntary and that they are without constitutional contamination. That, conversely, they are constitutionally antiseptic and that they are in full requirement of any of the standards for the admissibility of confessions, pursuant to Fourteenth Amendment criteria. And I find that they are free and voluntary and that they are legally admissible."

Defendant contends that his statements and confession were not voluntary and requests that this court make an independent *de novo* determination on the question of voluntariness. The recent case of *State v. Carter* [2] is controlling with respect to defendant's position. In that case it is said:

"While this court unquestionably has the power to review the evidentiary facts *de novo* where constitutional principles are involved, it does not follow that we must do so, especially when it appears adequate procedures have been adopted by the trial court. . . .
"Where the court has made detailed findings of facts . . . our review of the evidentiary or historical physical facts will be limited to the same review that is used in

[1] (1965), 27 Wis. (2d) 244, 265, 133 N. W. (2d) 753.
[2] (1966), 33 Wis. (2d) 80, 89–91, 146 N. W. (2d) 466.

other factual disputes heard and determined by a trial judge. The findings of the trial court will not be upset unless they are against the great weight and clear preponderance of the evidence." [3]

The facts leading up to and surrounding defendant's statements and confession may be summarized as follows: On January 20, 1965, sometime shortly before 10:45 p. m., defendant who was twenty-nine and had a ninth grade education, was seen by police officers Lazewski and Block behind a grocery store on East Lincoln avenue in Milwaukee. He was placed under arrest for suspicion of burglary and taken to "District No. 2 Station." Defendant testified that on the date of his arrest he had high blood pressure for which he was taking medication twice daily—in the morning and late afternoon. At the time of the arrest he did not have medication upon his person. He testified further that he had last had food and medication about 4 p. m. the day of the arrest.

No threats or promises were made to defendant between the time of his arrest and his arrival at the police station. At the police station he was interrogated from about 10:45 p. m. until midnight. Defendant testified that during that time he did not make any requests for anything, that he knew he had a constitutional right to refuse to answer any questions, that he knew anything he said could be used against him, and that he knew he had a constitutional right to retain counsel.

At about midnight defendant was taken to the Safety Building where he was booked and fingerprinted. He did not make any requests of anybody at that time. Shortly after 2 a. m. he was taken to a cell in the city jail where he remained until 6 a. m. the morning of January 21, 1965. He claims the bed in his cell consisted of "a plank fastened to the wall"—the "same" as in all the other cells, and that he did not sleep.

---

[3] See also *Davis v. State* (1967), 33 Wis. (2d) 682, 684, 148 N. W. (2d) 53.

At about 6 a. m. defendant, without having been offered breakfast, was taken to the "bullpen" and at about 8:30 a. m. was placed in a lineup. Shortly thereafter he was taken to an interrogation room where interrogation began about 8:45 a. m. Defendant testified that he was offered neither food nor medication, and that the absence of medication made him nervous and upset. He testified further that at approximately 10–10:30 he was asked to write out a confession whereupon he told the detectives present that it was against his constitutional rights and that he was entitled to counsel. At that point he claims one of the detectives said, "Well, he's one of those guys too" and that another mentioned that maybe they ought to "rough him up." The police officers present at the time denied that any such threat was made. No further mention was made about an attorney. It is undisputed that defendant never directly requested an attorney.

No promises were made which induced defendant to make any statement against interest although reference was made by Detective Ullenberg to a loaf of bread which defendant claims was an implied promise that if he would confess to one charge "they would dismiss the rest or consolidate them." More specifically with reference to the claimed implied promise, Detective Ullenberg admitted saying to defendant, "Here is a loaf of bread, you can give us a slice and keep the rest." Upon examination by the court, Detective Ullenberg testified he was alluding to a parable in Victor Hugo's "Les Miserables" concerning the fact that Jean Valjean stole a loaf of bread referring to the fact that "we all have to live by bread."

At about 11 o'clock defendant began admitting the acts he was asked about and at about 11:30 he made an "oral confession." At about noon he was offered food. Between 12 noon and 1 p. m. on the 21st before making a written statement defendant was taken to his home by the police where he changed clothes. His brother and sister-in-law were present but defendant did not converse with them nor did he in any way indicate that he wanted anything.

After returning to the interrogation room, which was shortly after 1 p. m., he reduced his admissions to writing.

It is significant that from the time defendant was apprehended he did not make and accordingly was not denied any requests, except that at the time of his arrest he requested permission to go into the house and see his sister-in-law, which request was denied.

It is argued that the police should have desisted interrogating defendant when he made the aforerelated reference to his right to counsel. Counsel for defendant makes repeated reference to the *Miranda* [4] and *Escobedo* [5] decisions in developing his argument. The procedural safeguards set forth in *Miranda* are not applicable since the trial in this case began before the date of that decision. [6] The *Escobedo* decision is, on the other hand, applicable. However, in *Browne v. State* [7] which was followed by *Neuenfeldt v. State*, [8] which reexamined the interpretation placed on *Escobedo* in *Browne,* this court confined *Escobedo* to its facts and held that an accused's constitutional rights are violated only if he requests counsel and his request is denied. [9]

---

[4] *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. (2d) 694.

[5] *Escobedo v. Illinois* (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. (2d) 977.

[6] *Johnson v. New Jersey* (1966), 384 U. S. 719, 86 Sup. Ct. 1772, 16 L. Ed. (2d) 882; *Reimers v. State* (1966), 31 Wis. (2d) 457, 143 N. W. (2d) 525. Although the procedural safeguards set out in *Miranda* were not made retroactive the principles contained therein with respect to the right to counsel are important elements to be considered in determining the voluntariness of a confession in trials which began before the *Miranda* decision. See *Davis v. North Carolina* (1966), 384 U. S. 737, 86 Sup. Ct. 1761, 16 L. Ed. (2d) 895.

[7] (1964), 24 Wis. (2d) 491, 129 N. W. (2d) 175, 131 N. W. (2d) 169, certiorari denied, 379 U. S. 1004, 85 Sup. Ct. 730, 13 L. Ed. (2d) 706.

[8] (1965), 29 Wis. (2d) 20, 138 N. W. (2d) 252.

[9] In accord: *Simpson v. State* (1966), 32 Wis. (2d) 195, 145 N. W. (2d) 206; *State v. Burnett* (1966), 30 Wis. (2d) 375,

Recently in *Holloway v. State* [10] it was said that this court's prior interpretations of *Escobedo,* limiting its applicability to the facts, had not been altered by *Miranda.* Defendant did not request counsel. Therefore there was no violation of the principles laid down in *Escobedo.* However, defendant's reference to counsel came close to what this court considers a request under the *Neuenfeldt* decision wherein it is stated:

". . . a request . . . need not be a formal one, but the desire to seek or have the advice of counsel must be communicated in some manner to him who has custody of the accused before it can be said there was a denial of counsel." [11]

While defendant was denied the right to see his sister-in-law at the time of his arrest there is no evidence whatever that he requested and was prevented from consulting with members of his family after he was taken to the police station or anytime thereafter. [12]

At the conclusion of the hearing on the voluntariness of the statements and confession made by defendant the court made detailed findings of fact which may be summarized as follows:

(1) At all times and places mentioned with respect to the interrogation conducted January 20 and January 21, 1965, defendant fully understood that he was not required to make any statement against his interest, that anything he said could be used against him and that he was entitled to counsel;

141 N. W. (2d) 221; *State ex rel. Goodchild v. Burke* (1965), 27 Wis. (2d) 244, 133 N. W. (2d) 753.

[10] (1966), 32 Wis. (2d) 559, 146 N. W. (2d) 441.

[11] *Supra,* footnote 8, at page 24.

[12] The denial or delay of an accused's request to talk to his family or friends is a factor to be considered in determining the voluntariness of a confession. See *Haynes v. Washington* (1963), 373 U. S. 503, 83 Sup. Ct. 1336, 10 L. Ed. (2d) 513; and *Phillips v. State* (1966), 29 Wis. (2d) 521, 139 N. W. (2d) 41.

(2) Defendant was specifically advised on January 21, 1965, by representatives of the Milwaukee police department of his constitutional rights;

(3) Defendant at no time made any request or requests that were denied him except the "unreasonable request" at the time of his arrest to have physical access to the premises occupied by his brother and sister-in-law;

(4) At no time on January 20 or January 21, 1965, was defendant threatened or was physical force employed to induce him to make the statements he made;

(5) No promises were made to defendant. The "so-called parable of the loaf of bread" was not a promise;

(6) Defendant was not deprived by any law-enforcement officer of any medication. The lack of medication "for the space of that one evening on the night of January 20th had no effect upon his making any statements subsequent thereto;"

(7) "Defendant was neither under physical coercion from the standpoint of his own physical condition, nor was he within an environment which was coercive in any physical or psychological respect" and finally;

(8) Under the "totality of circumstances" any statement or statements by defendant against his interest were the product of his "free and deliberate choice."

We conclude from our review of the record that these findings are not against the great weight and clear preponderance of the evidence.[13] In reaching this conclusion the acts of the police in providing defendant with only a plank on which to attempt to sleep and the failure to give him breakfast have caused us some concern. While we cannot approve of this conduct on the part of the police, we do not deem that this in itself is sufficient to require us to set aside the trial court's finding of the

[13] *Davis v. State* (1967), 33 Wis. (2d) 682, 684, 148 N. W. (2d) 53; *State v. Carter* (1966), 33 Wis. (2d) 80, 90, 146 N. W. (2d) 466.

voluntariness of defendant's statements and confession under the "totality of circumstances" test.

*Estoppel of State to Prosecute Instant Charges.*

Defendant in his written confession not only admitted the two burglaries and one attempted burglary for which he was prosecuted and convicted, but also a third burglary. On January 21, 1965, the day following his arrest, a complaint was filed which charged defendant with having committed only the third burglary. The charge was contested in a trial to the court presided over by Judge JOHN L. COFFEY, which trial took place June 3, 1965. After testimony was taken the case was continued for decision and on July 23, 1965, the day after the instant charges were instituted, the court dismissed the charge. A notation in the docket makes it clear that the dismissal was not announced until the instant charges had been instituted. Defendant contends that the three charges of June 22d, were brought primarily to punish him for contesting the earlier burglary case. The trial court found:

"I do not think that the mere filing of charges later is necessarily an implication that it is being done out of revenge or undue harsh punishment. It can just as conversely logically apply that if a prosecution had been successful in the one case, which is entirely separate and distinct from the others, that the District Attorney might, out of practical realism or maybe humane consideration, decide—well, that's enough to encompass everything so far as potential punishment is concerned. I wouldn't take the view that it would necessarily impute any diabolical machinations in that kind of procedure. I see no restriction to the District Attorney because of the dissents [in *United States v. Ewell*] [14] . . . .

"I disagree with the statement about the inference [of punishment] because it is just as possible that the District Attorney did not feel it necessary to issue further

[14] (1966), 383 U. S. 116, 86 Sup. Ct. 773, 15 L. Ed. (2d) 627.

warrants at any given time. He can always decide what his course of action will be."

On the basis of two United States supreme court decisions, *Green v. United States* [15] and *United States v. Ewell*,[16] defendant asserts that the state violated his rights under the due-process clause of the Fourteenth amendment by commencing the three later prosecutions against him after he contested the first proceeding because all the proceedings were based on the same confession and the latter were brought as punishment for contesting the first proceeding.

*Green* is readily distinguishable from the case at bar. It is premised upon the double-jeopardy clause of the constitution and condemns as unconstitutional the practice of penalizing a successful appellant by recharging him with a more severe crime stemming from the identical facts. *Green* is neither factually nor legally analogous to the case at bar.

*Ewell* likewise is distinguishable. Under its facts the government reindicted a defendant after a successful appeal for additional offenses arising out of the same transaction. The majority opinion sustained the reindictment of a single different offense stating such reindictment was not barred either by the constitutional guaranty of a speedy trial or by the constitutional prohibition against double jeopardy. No issue of estoppel was noted by the court.

Mr. Justice FORTAS in a dissent concurred in by Mr. Justice DOUGLAS condemned the reindictments as a denial of due process in the following language:

". . . the Government did not merely reindict appellees for the identical offense. They were charged, on the basis of the same alleged sale . . . with violations of two additional narcotics statutes. . . .

---

[15] (1957), 355 U. S. 184, 78 Sup. Ct. 221, 2 L. Ed. (2d) 199.
[16] *Supra*, footnote 14.

"In my opinion . . . the Government may not . . . reindict a defendant for additional offenses arising out of the same transaction . . . ." [17]

Mr. Justice FORTAS noted that *Green* taught:

". . . that the Government . . . may not attach to the exercise of the right to appeal the penalty that if the appellant succeeds, he may be retried on another and more serious charge." [18]

Defendant herein attempts by analogy to avail himself of the principles of the dissent in *Ewell, supra,* by stretching the term "same transaction" to apply to the confession which spawned the first proceeding which he successfully contested and the three later prosecutions which are the subject of this appeal. In other words it is his position, in part at least, that the three later prosecutions should not have been commenced inasmuch as they were based on the "same confession." But manifestly "same transaction" and "same confession" are not synonymous. The case at bar involves four separate and independent transactions—one attempted burglary and three completed burglaries.

We know of no principle of law that requires the state to prosecute in one action all criminal charges it may have against a particular person where the charges arise out of a transaction separate and apart from the others. There is another possible explanation beyond that advanced by Judge STEFFES for the state's failure to institute the instant charges until it became apparent that such prosecution would end adversely to the state. This is the state's belief that if defendant had been convicted in the first conviction he might then have been willing to plead guilty to the other three charges thus obviating the necessity of a trial.

Furthermore, if multiple charges were to be embodied as separate counts in one information, and a jury not

---

[17] *Supra,* footnote 14, at page 127.
[18] Id. at page 128.

waived by defendant, he in all likelihood would choose to move the court for a severance to avoid any possible prejudice that may result from the jury having knowledge that he is being tried on multiple charges.

In view of the foregoing we find no merit to defendant's contention that due process requires a holding that the state was estopped from prosecuting the instant charges.

*By the Court.*—Judgment affirmed.