EDWARDS, Plaintiff in error, v. STATE, Defendant in error.*

*February 2—February 27, 1968.*

---

* Motion for rehearing denied, without costs, on May 7, 1968.

For the plaintiff in error there was a brief by *David J. Hase*, attorney, and *Grootemaat, Cook & Franke* of counsel, all of Milwaukee, and oral argument by *Mr. Hase*.

For the defendant in error the cause was argued by *E. Michael McCann*, assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette*, attorney general, and *Hugh R. O'Connell*, district attorney.

WILKIE, J.

*Officers' Activity at Residence and Validity of Arrest.*

In urging his principal contention on this writ of error, defendant's arguments may be aptly characterized as seeking a rehearing of *Jackson*. In *Jackson* we concluded:

"Upon these facts we determine that there was no violation of defendant's constitutional rights in either the observations made by the two officers preceding the arrest for illegal use of heroin or in the arrest itself without a warrant." [3]

Defendant argues that the officers had to use considerable effort to look into his room because the better observations could only be made by looking through the

[3] *Jackson, supra,* footnote 1, at page 229.

vent at the bottom of the storm window. These observations, it is argued, constituted a "search." Because of the "effort" required, the argument runs, the officer did not have the constitutionally antiseptic "open view" of the premises, therefore the search was "unreasonable." The defendant argues that if he is successful on this claim his arrest on the misdemeanor charge and the subsequent observations, narcotics arrest, admissions and search and seizure would be invalid because a misdemeanor arrest without a warrant in this situation would be unlawful.

In *Jackson* this court examined the conduct of the policemen on first reaching the premises as against the principal test that their activities must be reasonable.[4]

This court held that the two officers were apprised by the log entry of the location of Edwards' one-room apartment in the building so "that they knew that the window through which they looked from the step of the porch was that of his apartment. In making their observations through the window they did not invade any portion of the premises leased to Edwards. What they saw *at once* disclosed conduct on the part of Edwards which was a breach of the criminal laws of the state, viz., encouraging defendant to violate her parole." (Emphasis ours.) [5]

In *Jackson* the court did not label the police activities on arriving at the rooming house a "search," but it determined that "there was no violation of defendant's constitutional rights" in the observations made by the two officers through the window.[6]

A search can be conducted by one's eyes alone. However, "A search implies a prying into hidden places for that which is concealed." [7] It is not a search to observe what is in plain view.[8] Even though visual surveillance of things within plain view may be regarded as a search

---

[4] *Id.; Browne v. State* (1964), 24 Wis. 2d 491, 507, 129 N. W. 2d 175, 131 N. W. 2d 169.

[5] *Jackson, supra,* footnote 1, at page 229.

[6] *Id.*

[7] *People v. Marvin* (1934), 358 Ill. 426, 428, 193 N. E. 202.

[8] *State v. Brown* (1964), 25 Wis. 2d 413, 418, 130 N. W. 2d 760.

the real issue to be settled is whether or not such activities are regarded as an unreasonable search as circumscribed by either the Fourth amendment of the United States constitution or art. I, sec. 11 of the Wisconsin constitution.[9]

Defendant cites *Brock v. United States,*[10] *People v. Kramer,*[11] *People v. Terrell,*[12] *Hurst v. California*[13] and *Smith v. State,*[14] as cases closely paralleling the situation present in the instant case.[15]

In all of these cases the searches (involving a view of seeming misconduct) were found to violate the constitutional safeguards on the fundamental rationale that they were conducted by officers who were engaged in an unlawful trespass. None involved a plain view from a recognized public part of a premises.

In the instant case, Officers Randa and Thelen were not trespassers. Their observations were made from the common stairway and porch. As the court in *Jackson* expressly held: "In making their observations through the window they did not invade any portion of the premises leased to Edwards."[16] Even if the officers had trespassed, that fact alone would not govern the constitutionality of a search. In *Browne v. State* this court considered the two conflicting values of personal privacy and the need for probative evidence in combating crime by asking the question: "Do trips through the technicalities of the law of trespass aid in the balancing task?"[17] The court concluded that such trips are ill advised, stating:

[9] *Browne v. State, supra,* footnote 4, at page 507.

[10] (5th Cir. 1955), 223 Fed. 2d 681.

[11] (1963), 38 Misc. 2d 889, 239 N. Y. Supp. 2d 303.

[12] (1967), 53 Misc. 2d 32, 277 N. Y. Supp. 2d 926.

[13] (D. C. Cal. 1962), 211 Fed. Supp. 387, 325 Fed. 2d 891, reversed on other grounds (1965), 381 U. S. 760, 85 Sup. Ct. 1796, 14 L. Ed. 2d 713.

[14] (1926), 33 Okla. Crim. 344, 244 Pac. 52.

[15] These cases were not cited to the court in its consideration of the same general issue in *Jackson.*

[16] *Jackson, supra,* footnote 1, at page 229.

[17] *Browne, supra,* footnote 4, at page 507.

"Thus, whether or not a search or investigation is reasonable is not a matter for the application of the comparatively rigid rules of tort and property law, but is rather a matter of an inquiry as to whether the search or investigation is constitutionally reasonable under the circumstances. If police conduct is not considered unreasonable in the circumstances, it is not made unreasonable if it is deemed to have involved a civil trespass." [18]

In the very recent case of *Katz v. United States*,[19] the United States Supreme Court delivered the *coup de grace* to the trespass theory as being determinative of Fourth amendment rights. *Katz* involved the use of evidence obtained when FBI agents attached an electronic listening and recording device to the outside of a public telephone booth from which the defendant was transmitting wagering information. The government contended that the surveillance technique it employed involved no physical penetration of the telephone booth. The court disregarded this argument, holding that the trespass doctrine is no longer controlling and the fact that no penetration had occurred was of no constitutional significance.

Thus, as we stated in *Browne*,[20] the test to be applied in determining whether a search is constitutional is one of reasonableness under the circumstances.

When the officers left the station after examining the logbook, they may not have had probable cause to arrest defendant or to obtain a warrant to search Edwards' room. But the officers did have a reasonable basis for conducting a reasonable investigation following up that information from the logbook entry that Edwards was likely to be in his room and that others were likely to be in a "community deal" there. This investigation was also reasonably prompted by the officers' general knowledge that Edwards and Mrs. Jackson had been associating to-

[18] *Id.* at page 508.
[19] (1967), 389 U. S. 347, 88 Sup. Ct. 507, 19 L. Ed. 2d 576.
[20] *Supra,* footnote 4, at page 508.

gether and that both were notorious narcotics users. What the officers "saw at once" from the porch steps, as the *Jackson Case* clearly points out, disclosed conduct on the part of Edwards which was in violation of sec. 946.46, Stats., viz., encouraging Janet Jackson to violate her parole.[21] The police officers directed their eyes through the window as they ascended the staircase. This was not unreasonable conduct. Their entry into the defendant's room, his immediate arrest for the misdemeanor, and the subsequent search and resulting arrests of both defendants on the narcotics charges were valid.

Two other issues are presented on this review.

1. Was it proper to give weight as substantive evidence to the entry in the police log?

2. Should the defendant's oral admissions be excluded from evidence?

### *Log Entry.*

We have said that the information supplied in the log justified Officers Randa and Thelen in going to the premises at 2228 North First street.

Defendant argues that the entry in the log was identified and read into the record for impeachment purposes only and cannot be given weight as substantive evidence under the rule of *State v. Major.*[22] In *Major* one of the state's witnesses gave testimony which was inconsistent with a previous stenographically-recorded statement that the witness had given to two police officers. The state had the witness declared hostile and read portions of the statement into the record. This court reversed the conviction holding that the statement could not be considered as part of the state's affirmative proof because it was only admitted to impeach the hostile witnesses.

[21] *Jackson, supra,* footnote 1, at page 229.
[22] (1956), 274 Wis. 110, 79 N. W. 2d 75.

Defendant claims that Officers Randa and Thelen testified that they went to Edwards' room merely to determine whether the defendant and Mrs. Jackson were living together and that the sole basis for their information was the log. Defendant argues that because the log does not specifically recite that Edwards and Jackson were living together, it was introduced to cast doubt upon the officers' credibility and, therefore, the log was admitted for impeachment purposes only. Officer Randa testified that upon his arrival at work on December 14, 1964, he received the information in the log. It is also pointed out that the testimony of Officer Thelen strongly indicates that factors other than the log entry motivated the officers in making their decision to go to the First street address. Furthermore, the state argues that employment of the word "community" in the entry alerted the officers that Edwards was keeping company with someone and that their prior knowledge of Jackson's and Edwards' companionship allowed an inference that they were the "community" mentioned.

Therefore, the state argues and we conclude that the *Major Case* is inapplicable because counsel for the defense, by reading the contents of the log entry into the record, failed to limit its value to impeachment purposes. We think it is clear that the officers had read the entry. Armed with this knowledge the officers acted reasonably in going to the defendant's apartment house. There was no error in giving substantive weight to the entry in the log.

### Defendant's Admissions.

Defendant made certain admissions to the officers shortly after they entered Edwards' room. It is admitted that defendant never requested counsel. This case was tried between the United States Supreme Court's decisions in *Escobedo v. Illinois* [23] and *Miranda v. Arizona* [24]

[23] (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. 2d 977.
[24] (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

and consequently defendant contends that *Escobedo* applies. Specifically he argues that the oral admissions should be thrown out not only because he was not provided with counsel during his interrogation, but also because he was not advised of his right to remain silent or his right to counsel. This court has repeatedly held that *Escobedo* is limited to its facts.[25] Therefore, *Escobedo* is not applicable here since Edwards never requested counsel.

At the time this case was tried, there was no hard-and-fast rule in this state requiring that an accused be informed of his constitutional right not to incriminate himself.[26] Rather, it was the totality of the circumstances which governed the admissibility of confessions alleged to be involuntary.[27]

Under the totality of the circumstances in this case, the statements and admissions of Edwards were admissible. Defendant's statements came within a few minutes after the arrest, while in the presence of a friend and while in his apartment. No force, threats, or promises

[25] *Browne v. State, supra,* footnote 4, at pages 511f, 511g; affirmed in *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 257, 133 N. W. 2d 753; *Neuenfeldt v. State* (1965), 29 Wis. 2d 20, 28, 138 N. W. 2d 252; *Phillips v. State* (1966), 29 Wis. 2d 521, 526, 139 N. W. 2d 41; *State v. Burnett* (1966), 30 Wis. 2d 375, 383, 141 N. W. 2d 221; *Simpson v. State* (1966), 32 Wis. 2d 195, 203, 145 N. W. 2d 206; *Holloway v. State* (1966), 32 Wis. 2d 559, 564, 146 N. W. 2d 441; *Ray v. State* (1967), 33 Wis. 2d 685, 688, 148 N. W. 2d 31; *Greenwald v. State* (1967), 35 Wis. 2d 146, 153, 150 N. W. 2d 507; *Bradley v. State* (1967), 36 Wis. 2d 345, 358, 153 N. W. 2d 38.

[26] *Simpson v. State, supra,* footnote 25, at page 203; *State ex rel. Van Ermen v. Burke* (1966), 30 Wis. 2d 324, 331, 140 N. W. 2d 737; *Harris v. State* (1966), 29 Wis. 2d 479, 485, 138 N. W. 2d 745; *Neuenfeldt v. State, supra,* footnote 25, at page 25; *Holt v. State* (1962), 17 Wis. 2d 468, 479, 117 N. W. 2d 626.

[27] *Greenwald v. State, supra,* footnote 25, at page 150; *State v. Carter* (1966), 33 Wis. 2d 80, 90, 91, 146 N. W. 2d 466; *State ex rel. Goodchild v. Burke, supra,* footnote 25, at page 257.

344

were used. The statements were voluntary and the trial court's detailed findings to this effect are not contrary to the great weight and clear preponderance of the evidence.[28]

*By the Court.*—Judgment and order affirmed.

---

[28] *State v. Carter, supra,* footnote 27, at pages 89–91.

\* Motion for rehearing denied, without costs, on May 7, 1968.