GREENWALD *v.* WISCONSIN.

No. 417, Misc.   Decided April 1, 1968.

*Bronson C. La Follette,* Attorney General of Wisconsin, for respondent.

PER CURIAM.

Petitioner was charged with two burglaries and one attempted burglary.   He entered pleas of not guilty to each count.   Before trial, petitioner requested a hearing on the voluntariness of certain oral admissions and a written confession he had given while in police custody. The hearing was held and the trial court found that the statements had been voluntarily made.   Petitioner waived jury trial.   The statements were admitted in evidence and he was convicted on all three counts.   On each of them he was sentenced to an indeterminate term of not more than five years, with the sentences to run concurrently.   The Wisconsin Supreme Court, on appeal, affirmed the convictions.   It agreed with the trial court that the statements in question were voluntary.   Petitioner sought a writ of certiorari.   We grant the motion for leave to proceed *in forma pauperis,* grant the writ, and reverse the judgment below.

Petitioner, who has a ninth-grade education, was arrested on suspicion of burglary shortly before 10:45 on the evening of January 20, 1965.   He was taken to a

police station. He was suffering from high blood pressure, a condition for which he was taking medication twice a day. Petitioner had last taken food and medication, before his arrest, at 4 p. m. He did not have medication with him at the time of the arrest. At the police station petitioner was interrogated from 10:45 until midnight. He was not advised of his constitutional rights. Petitioner repeatedly denied guilt. No incriminating statements were made at this time.

Petitioner was booked and fingerprinted and, sometime after 2 a. m., he was taken to a cell in the city jail. A plank fastened to the wall served as his bed. Petitioner claims he did not sleep. At 6 a. m., petitioner was led from the cell to a "bullpen." At 8:30 he was placed in a lineup. At 8:45, his interrogation recommenced. It was conducted by several officers at a time, in a small room. Petitioner testified that in the course of the morning he was not offered food and that he continued to be without medication. For an hour or two he refused to answer any questions. When he did speak, it was to deny, once again, his guilt.

Sometime after 10 a. m., petitioner was asked to write out a confession. He refused, stating that "it was against my constitutional rights" and that he was "entitled to have a lawyer." These statements were ignored. No further reference was made to an attorney, by petitioner or by the police officers.

At about 11 a. m. petitioner began a series of oral admissions culminating in a full oral confession at about 11:30. At noon he was offered food. The confession was reduced to writing around 1 p. m. Just before the confession was reduced to writing, petitioner was advised of his constitutional rights. According to his testimony, he confessed because "I knew they weren't going to leave me alone until I did."

It is our duty, in a case such as this, to make an examination of the record in order to ascertain whether peti-

tioner's statements were voluntary.* See *Davis* v. *North Carolina,* 384 U. S. 737, 741–742 (1966). We believe that, considering the "totality of the circumstances" surrounding the statements, see *Clewis* v. *Texas,* 386 U. S. 707 (1967), it was error for the Supreme Court of Wisconsin to conclude that they were voluntarily made. We reach this decision as in *Clewis,* without reference to disputed testimony taken at the pretrial hearing.

All of the above recited facts are, under our decisions, relevant to the claim that the statements were involuntary: the lack of counsel, especially in view of the accused's statement that he desires counsel (see *Johnson* v. *New Jersey,* 384 U. S. 719, 730, 735 (1966); cf. *Escobedo* v. *Illinois,* 378 U. S. 478 (1964)); the lack of food, sleep, and medication (see *Clewis* v. *Texas,* 386 U. S. 707 (1967)); the lack or inadequacy of warnings as to constitutional rights (see *Culombe* v. *Connecticut,* 367 U. S. 568, 630 (1961); *Johnson* v. *New Jersey,* 384 U. S. 719, 730 (1966)). Considering the totality of these circumstances, we do not think it credible that petitioner's statements were the product of his free and rational choice.

Accordingly, the judgment below is reversed.

MR. JUSTICE STEWART, with whom MR. JUSTICE HARLAN and MR. JUSTICE WHITE join, dissenting.

I cannot agree that the petitioner's confession was involuntary as a matter of law. When he was taken to the police station for questioning he was nearly 30 years old and was by no means a stranger to the criminal law. He was questioned for little more than an hour one evening

---

*Petitioner's trial began before the date of our decision in *Miranda* v. *Arizona,* 384 U. S. 436 (1966). Although petitioner's trial was after the date of our decision in *Escobedo* v. *Illinois,* 378 U. S. 478 (1964), we need not and do not decide whether that decision would, in itself, require reversal of petitioner's convictions. See *Johnson* v. *New Jersey,* 384 U. S. 719 (1966).

and for less than four hours the next morning. He was neither abused nor threatened and was promised no benefit for confessing. The Court says that the officers did not tell him about his "constitutional rights." But what the Court fails to mention is that the petitioner himself testified that, during his interrogation, "he knew he had a constitutional right to refuse to answer any questions, . . . he knew anything he said could be used against him, and . . . he knew he had a constitutional right to retain counsel." 35 Wis. 2d 146, 151, 150 N. W. 2d 507, 509. Moreover, although the Court's opinion might convey a contrary impression, the petitioner himself testified that at no time between his arrest and his confession did he express to anyone a desire for food or for medication.

The judge who conducted the pretrial hearing held that the State had the burden of proving "beyond a reasonable doubt" that the petitioner's decision to confess was the product of his own unfettered will. Applying this standard, the judge found that the "totality of the circumstances" confronting the petitioner was not "coercive in any physical or psychological respect" and that he had made a "free and deliberate choice to admit his guilt." These findings were reviewed and affirmed by the Supreme Court of Wisconsin in a conscientious and thorough opinion. 35 Wis. 2d 146, 150 N. W. 2d 507.

Given the evidence on which the conclusions of the state courts were based, it is not surprising that the petitioner has completely abandoned any claim that his confession was coerced. That claim is advanced here not by the petitioner but by this Court, which has not only raised the issue on its own motion but decided it in the petitioner's favor, without giving Wisconsin any opportunity to brief or argue the question on the merits.*

---

*The petitioner does not raise, and the Court does not reach, the question whether his confession was inadmissible under *Escobedo* v. *Illinois*, 378 U. S. 478.