**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Hugh Howard POLK and Deloy Duett
Polk, Defendants-Appellants.**

**No. 27897
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Oct. 27, 1970.

---

* ■ Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Dan M. Lee, W. S. Moore (lead counsel), Jackson, Miss., for defendants-appellants.

H. M. Ray, U. S. Atty., Norman L. Gillespie, Asst. U. S. Atty., Oxford, Miss., for plaintiff-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

Hugh H. Polk and Deloy D. Polk appeal from their conviction for conspiracy to transport stolen automobiles in interstate commerce. 18 U.S.C. § 371. Deloy Polk also appeals from his conviction for receiving a stolen automobile which had moved in interstate commerce knowing it to have been stolen. 18 U.S.C. § 2313. The Polks object (1) to admission of testimony about the vehicle identification number observed on the door post of one of the stolen cars by a police officer, (2) to a jury instruction on permissible inferences from possession of recently stolen property, and (3) to the adequacy of the evidence to support their conviction. We affirm.

I.

The evidence reveals a scheme of changing the public vehicle identification numbers (PVIN) on stolen automobiles to prevent identification of the stolen cars. The PVIN appears on a removable plate, usually attached to the front left door post of a car. The plate contains digits designating the manufacturer, model and year of the car. The last six digits constitute the serial number of the car, known as the true vehicle identification number (TVIN). The TVIN is also found stamped into the metal parts of the car in a number of locations, for instance just behind the radiator and on the rear axle.

After the vehicles involved in this case were stolen, the thieves replaced their PVIN plates with ones taken from non-stolen vehicles of the same type and model. Thus the PVIN would show the correct type and model designation but an incorrect serial number. Only by comparing the serial number in the PVIN with the TVIN less conveniently located would the falsity of the PVIN become apparent.

Four automobiles were involved in this case. The Polks purchased tags for all four in the Northern District of Mississippi.

June 22, 1965, a 1964 Chevrolet Super Sport was stolen in Dallas, Texas; about the same time in Dallas the PVIN plate was removed from a non-stolen 1964

Chevrolet Impala Coupe. On September 20, 1965, Hugh Polk purchased a license tag for a 1964 Chevrolet Super Sport with the PVIN of the plate taken from the non-stolen Dallas car; the tag was purchased for Deloy Polk from the Sheriff's Office in Tunica County, Mississippi. Neither of the Polk brothers was a resident or an employee in Tunica County. In order to purchase the tag, Hugh Polk gave a false residence and place of employment for Deloy Polk.

On October 17, 1965, in Quitman County, Mississippi, Deloy Polk was in an automobile accident while driving the Chevrolet. The car was damaged and was taken to Owen Garage in Clarksdale, Mississippi. A patrolman, suspicious because he had seen two different tags for the same automobile in two counties, went to the garage to check the PVIN. After observing that someone had tampered with the PVIN plate, he put his finger under the corner of it and it popped off in his hand. This further aroused his suspicions and he alerted an FBI agent. When the agent went to the garage, the car was dismantled. He merely read the TVIN on the exposed left rear part of the frame of the car. This showed the car to be the one stolen in Dallas on June 22. This information led the authorities to investigate further the automobile transactions of the Polk brothers. They discovered three other thefts.

A turquoise 1965 Grand Prix Pontiac was stolen September 11, 1965, in Dallas, Texas. At about the same time, the PVIN plate was taken from a similar non-stolen car in Dallas. Hugh Polk purchased a license tag for a 1965 Pontiac Grand Prix on October 20, 1965, in Tallahatchie County, Mississippi, using the PVIN of the plate taken from the non-stolen car. The alleged transferor of the car to Polk, according to the registration papers, could not be located by the FBI. After Polk sold the car, an inspection of the TVIN located on the rear axle showed the vehicle to be the one stolen in Dallas.

Also on October 20, 1965, a woman purchased a license tag for Hugh Polk in the Sheriff's Office at Sumner, Mississippi, for a 1965 Cadillac Coupe de Ville, using the PVIN of a Dallas, Texas, car, the plate for which was removed about the same time. Six days later a 1965 Cadillac Coupe de Ville was stolen in Monroe, Louisiana. On October 29 Hugh Polk sold the stolen car to a person in Memphis, Tennessee; the car carried the PVIN plate taken from the car in Dallas, Texas. The FBI was unable to locate the alleged transferor of the car to Hugh Polk.

October 19, 1965, Deloy Polk, under an assumed name, purchased a license tag 68–2217, in the Sheriff's Office of Tallahatchie County, Mississippi, for a 1965 Pontiac Bonneville. October 24 such a car was stolen in Pensacola, Florida. November 3, 1965, a patrolman gave chase to a 1965 Pontiac with Tallahatchie County license 68–2217 because it was moving at an excessive rate of speed. The driver abandoned the car. Identification papers in the car gave the name of the Florida owner of the stolen Pontiac. The PVIN on the abandoned car was the same as that given in Deloy Polk's license application. It had been substituted for the original PVIN.

On these facts, the Polks were found guilty as charged by a jury.

## II.

The first error the Polks assign is the district court's failure to suppress the evidence gathered when a patrolman opened the door of the car in the garage to read the public vehicle identification number on the door post. It is important to point out what is not involved in this case: 1) the car door was not locked; 2) there was no damage to the car in making the inspection; 3) there was no search of private areas of the automobile, for instance the glove compartment, for identification; 4) there was no seizure of the car; 5) there was no infringement of other property rights

of the defendant, since the car was located in a repair garage, the owner of which gave the officer permission to check the car; 6) there was no stopping of the car in transit that might infringe the rights of persons to free movement.

■ Our recent decision in United States v. Johnson, 5 Cir. 1969, 413 F.2d 1396, affirmed en banc, August 13, 1970, held that such a limited inspection of a vehicle identification number is not a search within the meaning of the fourth amendment. The rationale for this holding is that an automobile owner can have no reasonable expectation of privacy with respect to the car's VIN. See Mancusi v. DeForte, 1968, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154. The "reach of [the Fourth] Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure." [1] Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed. 2d 576.

Vehicle identification numbers are put on automobiles by the manufacturers to aid in identifying the vehicles. There are so many similar cars that individual vehicles can be identified only through the use of such individual numbering. State laws contain many requirements for disclosing and recording such VIN's, showing a generally accepted mode of disclosure and the lack of any reasonable expectation of privacy with respect to the numbers.

Most states require that automobiles be registered with a state agency to establish a record of car ownership. The registration, which must be carried in the car, identifies the car by its VIN. These requirements proceed from a purpose to keep track of the ownership of potential instruments of personal and property injury, so that drivers in auto-

mobile accidents can be traced and so that compulsory insurance requirements can be enforced. Additionally, the state seeks to protect ownership rights in these mobile and expensive assets. License plates are not sufficient for these purposes because of their easy removability.

It is routine practice for policemen stopping cars in traffic control operations to ask for the automobile registration papers in addition to the driver's license. Viewing registration papers is part of the accepted regulatory scheme.

VIN's are typically disclosed to private parties also. Automobile purchase and sale documents usually identify the car by its VIN. Automobile insurance policies also identify cars by their VIN's. There can therefore be no reasonable expectation of privacy with respect to the identity of the VIN. Opening the car door, looking under the hood, or crawling under the car to inspect the rear axle does not independently bring an inspection of the VIN within the scope of the Fourth Amendment.

■ A car is not a home. An automobile runs and stops on the public roads, where viewers may crawl under it or press their faces against its windows. Its exterior and much of its interior are within the "plain view" of the casual or purposeful onlooker, and thus are not protected by the Fourth Amendment from searching eyes. *See, e. g.,* Marshall v. United States, 5 Cir., 1970, 422 F.2d 185; Wright, Federal Practice and Procedure § 668 (1969).

■ Thus the VIN on the rear axle or on the car frame are outside any reasonable expectations of privacy. Those that may be seen only by opening the car door or hood are no more private: doors and hoods are continually opened to the eyes of observers. Al-

---

1. Whether *Katz* means that a trespass does not always constitute a fourth amendment search or only that a trespass is not necessary to a search was left open by the Court. See The Supreme Court —1967 Term, 82 Harvard Law Review, 63, 189 n. 14 (1968). The rationale that reasonable expectations of privacy rather than property rights are the interests protected by the fourth amendment should be allowed its full scope. A technical trespass should not necessarily be deemed a fourth amendment search when no expectations of privacy are disappointed. *See* Edwards v. State, 38 Wis.2d 332, 156 N.W.2d 397 (1968).

though opening the door of a car may involve a technical trespass, such action does not invade any expectations of privacy.

This is the rationale for the *Johnson* decision. On its authority, the district court correctly admitted testimony on vehicle identification numbers.

## III.

■ The appellants' second specification of error attacks the trial judge's instruction concerning inferences permissible from the possession of recently stolen property. He charged the jury as follows:

> Any possession of property recently stolen, if not satisfactorily explained, is also ordinarily a circumstance from which the jury may reasonably draw the inference and find in the light of surrounding circumstances shown by the evidence in the case that the person in possession not only knew it was stolen property but also participated in some way in the theft of the property.

The Polks assert that this charge is unconstitutional under Leary v. United States, 1969, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57.

The appellants had requested that this charge be given rather than one submitted by the government. The decision in *Leary* was announced two months after the trial. Putting aside the question whether *Leary* is retroactive, we hold that the decision in that case does not undermine the validity of the charge given by the trial judge.

The standard set out in *Leary* for determining the constitutionality of a presumption is whether "it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." 395 U.S. at 36,

89 S.Ct. at 1548. The charge involved here meets this standard.

In *Leary* possession of marijuana gave rise to a presumption that the defendant knew that the marijuana had been illegally imported. The only argument to support the presumption was that all or most marijuana was illegally imported, and that the defendant knew this. The Court went to great lengths to demonstrate that there was no way to tell whether the particular marijuana had in fact been illegally imported. Nor was there any way to know when, if at all, any illegal importation had occurred. The statutory scheme in effect involved a two-step presumption: first, that the drugs had been illegally imported and second, that the defendant knew of this illegal importation.

In this case the conclusion is closely related to the facts. As is typical in the Dyer Act cases, three facts were proved explicitly: 1) that the car was in fact stolen; 2) when the car was stolen; 3) that the defendant had possession of the stolen automobile shortly after it was stolen. The proximity in time between the proved theft of the car and the defendant's possession make it likely that the defendants participated in the theft or in the interstate transportation of the car knowing of the theft.

Automobiles, like many other items, are not hawked on street corners. Because they are expensive, durable, and identifiable, they are usually bought from established dealers or others who can show some proof of their title to the property. Buyers should and generally do seek proof of title. Therefore, it is proper to infer that one possessing a recently stolen car did not haphazardly buy it on the street without knowledge of the theft. For the same reasons, it should be easier than in the *Leary* situation—where contraband was involved—for the defendant to support allegations that he acquired the property legitimately.[2]

---

2. Although the ease of the defendant's proving the negative was not considered

by the Court in determining the constitutionality of the presumption in *Leary*, it

Additionally, the court did not charge that possession alone supported such an inference; the court charged that it was one circumstance, to be considered in light of all the circumstances, permitting the inference. In this case there was other circumstantial evidence supporting such a jury determination. Hugh Polk sold two of the cars shortly after they were stolen. The FBI could not find the two alleged transferors of cars to Hugh Polk and presumably they were fictitious. The Polks purchased tags for the different cars from different sheriffs' offices and used a false name on one occasion and a false address and place of employment on another occasion.

## IV.

Finally, the appellants contend that the convictions below were not supported by sufficient evidence in the record. The record shows this contention to be without merit.

The judgment of the trial court is therefore

Affirmed.

is a reasonable additional requirement for a valid presumption or inference. *Cf.* Model Penal Code, Tent.Draft No. 4, Comment § 1.13 at 112 (1955).