**THE PEOPLE OF THE TERRITORY OF GUAM**

v.

**JOSEPH PANGELINAN, Defendant**

Criminal Case No. 207F-78

Superior Court of Guam

November 30, 1978

WEEKS, *Judge*

DECISION

This matter comes before the Court on defendant's motion to suppress evidence. Hearing in Criminal Case No. 101F-78 was begun on September 25 and 26, 1978. By stipulation, after the dismissal of that case, the evidence adduced was incorporated into Criminal Case No. 207F-78 heard on October 19, 1978.

Evidence was adduced concerning the circumstance attending (1) the removal of physical objects from the Chevrolet Camaro at Naval Regional Medical Center, (2) the taking of defendant's oral statement by Detective Quenga on May 2, 1978, at Guam Memorial Hospital, and (3) the removal of certain items of clothing from defendant's hospital room on May 5, 1978.

The first matter to be considered will be the evidence taken from the yellow Chevrolet Camaro on 1 May 1978.

The facts as presented by the Government are that following a shooting occurring at Ling's Store, the Guam police broadcast a description and license number of a yellow Chevrolet Camaro with several occupants presumed to be in that vicinity. Armed Forces Police Detachment witnesses testified that "responsibles" were said to be in the described vehicle.

A Navy Security Man patroling the hospital grounds saw such a vehicle exceeding the speed limit en route to the emergency room entrance although at that time he was unaware of any of the other facts. He was told upon inquiring that they were involved in a shooting and were being treated.

Shortly thereafter, Armed Forces Police Detachment entered the hospital grounds and inquired of security as to the described vehicle. Accompanied by Security, they stopped the exiting car. The car, according to Armed Forces Police Detachment Officer Marker, had bullet holes and flat tires.

The driver, a female, initially refused to exit the vehicle but complied when ordered at gunpoint. She was seen to move to the right across the seat before leaving the car.

When she left the vehicle the Armed Forces Police Detachment opened her purse which was in the front of the car and found a can of mace and a .357 magnum revolver.

They then obtained a Commander's Search Warrant and continued the search of the vehicle.

 The reasons of necessity, which permit warrantless searches of automobiles and other vehicles upon the combination of probable cause and exigent circumstances, do apply to the case in question.

The vehicle fit the description radioed by the police; it had visible bullet holes and flat tires. It was in the vicinity where the vehicle was reported to flee; at least one radio report had characterized the occupants as responsibles. The Security Officer testified he had been previously informed that some of its occupants were being treated for gunshot wounds. All of these factors constitute probable cause to believe it contained evidence of crime.

Only one person, not the owner (although the legal title was in question it was clear the sole female removed from the car at this point was not the owner of the vehicle), was within the vehicle. The ability of any of the other prior occupants or owner to return to the car and remove the vehicle or its contents was apparent.

The mobility factor therefore still existed and there was a danger arising out of that imminent mobility that evidence could be destroyed or removed.

The Commander's Warrant, obtained after the search commenced, was unnecessary. Under these particular circumstances, the prerogative to make a warrantless search had vested, and once vested did not divert.

It is the opinion of this Court that the statement made by defendant at the hospital, while not given in circumstances as egregious as those in *Mincy v. Arizona*, 98 S.Ct. 2408, is, nevertheless, not admissible.

 The defendant was operated on after being given two (2) anesthetics; he exited the operating room at 9:30 a.m. He had had surgery for 1½ hours to repair two bullet

wounds and was in a cast. His surgeon and attending physician testified that between noon and one o'clock when he (the surgeon) checked the patient he was so drowsy that he could be alerted only by pinching to get a response to pain. The surgeon further testified that it was hospital policy to allow no decision to be made by patients within four hours of the administration of anesthesia or sedative; the reason being, to paraphrase Dr. Tolentino, that the anesthetized or sedated patient could be too compliant to communicate his real thoughts, however superficially coherent he might appear.

In light of that persuasive and professional testimony, this Court cannot presume that total mental responsibility had returned to this patient by the time the formal taped questioning began at 1:30 p.m. on 2 May.

The quality of the defendant's mixed Chamarro-English response is not so incisive either in its content or in the tone of the taped conversation to discount the impression left by the doctor's statement.

The situation is exacerbated by the officer's response to defense counsel that the inaudible portion of defendant's response (noted on the translated transcript of the tape prepared as an exhibit for the Court) had something to do with defendant's wanting to talk with someone. The officer testified that he did not pursue defendant's mumbled comment to clarify what had been said.

It is not inconceivable that defendant asked to see a lawyer at this point and the possibility cannot be ignored. Indeed, defendant testified he made such a request.

In light of the above, this Court finds that the oral statement was not "the product of his free and rational choice", *Greenwold v. Wisconsin*, 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77, and cannot be used against him at his trial.

From this conclusion as to his condition at the time of the interview, it is apparent that the consent to the release of the items of clothing to the police is equally unreliable. If their admissibility were based on defendant's consent alone, they too would be found lacking.

However, it has been stipulated that defendant was "in custody" at the hospital when the clothing was removed. The Government contends that in a sense he was "under arrest"; the formalities of arrest merely awaiting his discharge. Therefore, the Government maintains, his clothing was available to them to make an inventory of his belongings because such right to inventory exists upon arrest.

The Court finds such justification unpersuasive in view of the fact that the formal arrest had *not* in fact occurred, and the defendant did not know of the status the Government assumed existed. Therefore, the items of clothing are also suppressed for use as evidence against the defendant.

This Court therefore denies the motion to suppress the items removed from the Camaro, and grants the motion to suppress the oral statement and the clothing.