STATE EX REL. VAN ERMEN, Petitioner, v. BURKE, Warden, Respondent.

*March 18, 1966.*

---

[8] See *Jonas v. State* (1963), 19 Wis. (2d) 638, 644, 121 N. W. (2d) 235.

*Peter Wheeler Reiss* of Sheboygan for the petitioner.
*Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general, for the respondent.

PER CURIAM. Robert Van Ermen petitioned this court for writ of *habeas corpus*, entered April 7, 1965. We determined that petitioner had made an arguably meritorious claim. The respondent was ordered to show cause why a writ of *habeas corpus* should not issue directing the release of the petitioner. A return was made by the respondent through the attorney general's office. We found that the petition and return raised issues of fact. These issues were submitted to the circuit court for the county in which the crime was committed, viz., the circuit court for Sheboygan county, FERDINAND H. SCHLICHTING, Circuit Judge. At the same time we appointed Peter Wheeler Reiss, of Sheboygan, to represent petitioner in this matter since petitioner was found to be indigent. On December 22, 1965, after a hearing, Judge SCHLICHTING made findings of fact and reported the same to this court. The attorney general has moved this court to confirm such findings of fact and deny the petition. Petitioner has moved this court to set aside certain of said findings of fact.

Van Ermen was prosecuted for first-degree murder, entered a plea of not guilty with the advice of counsel, received a jury trial, was found guilty of first-degree murder by the jury, and on August 22, 1961, was sentenced by the court, Honorable MERRILL FARR, Circuit Judge for the Twenty-third circuit, presiding, to life imprisonment in the state prison. The petition for the writ of *habeas corpus* is based on the following alleged grounds:

1. Petitioner was not informed of his constitutional rights against unreasonable search and seizure.

2. Petitioner was not informed of his right against self-incrimination.

3. Petitioner was held incommunicado for fifty-five hours during which time he was deprived of his right to consult legal counsel, although informing the arresting officers of his desire to see counsel.

4. Petitioner was held almost fifty-eight hours before being charged.

*Failure to inform petitioner of his constitutional rights against unreasonable search and seizure.*

Judge SCHLICHTING made the following finding of fact with respect to the issue of unreasonable search and seizure:

"That physical evidence obtained from the petitioner and from his residence and used against him in evidence was either taken from the person of petitioner with his voluntary consent and while he was under arrest and in custody or was obtained pursuant to voluntary written consents to search his residence signed by petitioner and his wife, Mrs. Donna Van Ermen, or was found in the yard and elsewhere outside the dwelling; that a pretrial motion to suppress evidence dated April 24, 1961, supported by affidavits of petitioner and his said wife Donna Van Ermen, was made by counsel for petitioner; that the state offered affidavits of Eugene F. Spelhaus, an officer of the Sheboygan Police Department, and of Detective John W. Zindar in opposition to said motion; that the motion to suppress evidence was submitted to the trial court upon the said affidavits without further testimony and was denied by the court; that the evidence in question was received at the trial without further objection by the defense."

This finding is supported by ample evidence: Petitioner signed a written consent to the search of his home, the consent stating that he had been "informed of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, . . ." Petitioner alleges that he did not read the consent before signing it and only signed it because he thought he had to. However, this testimony is contradicted by the two police officers present when petitioner signed the consent. Their testimony related that petitioner was advised he

did not have to sign the consent and voluntarily agreed to do so. The weight of the evidence, therefore, supports the finding that petitioner freely consented to the search of his home.

Judge SCHLICHTING'S determination, that the evidence obtained from petitioner's person by the officers was obtained with petitioner's voluntary consent, is also supported by the weight of the evidence. Petitioner alleges that he only agreed to the search because he thought the officers had a right to search and the officers only asked him if he had any objection. Again the testimony of the two officers present, Officers Zindar and Keitel, clearly indicates that the physical evidence obtained was obtained with petitioner's consent. Furthermore, we are not aware of any holding by this court or the United States supreme court that a person accused of crime must be informed of any right to refuse to consent to a search being made of his person or premises.

*Failure to inform petitioner of his right against self-incrimination.*

Petitioner alleges that certain statements he made while in custody, testified to by police officers, should not have been admissible because the police failed to inform him of his right against self-incrimination and to remain silent. One damaging statement in particular, testified to by Officer Zindar, relates to the brick petitioner allegedly used as a weapon to kill his victim, Mrs. Florence Bruss, by striking her on the head. This statement was testified to at the trial during the following sequence:

"*Q.* Now, Officer, during the course of your interview with the defendant, Robert Van Ermen, will you tell us whether or not you informed him that the instrument you believed to be the weapon used on Mrs. Bruss had been found in his yard? *A.* I had informed him that we felt we had the weapon which was connected with Mrs. Bruss' death.

"*Q.* How did you put the statement exactly? *A.* I used the word 'weapon'. I did not explain in detail what discovery was made.

"*Q.* You said it was found in his yard? *A.* It was found in his yard. I did not state I had found it.

"*Q.* Officer, what did he reply to that? *A.* That was brought up to Mr. Robert Van Ermen and Mr. Van Ermen stated, 'There are a lot of bricks in my yard.'

"*Q.* Had you informed the defendant the weapon you were referring to was a brick? *A.* I had not."

This court has never adopted a hard-and-fast rule that an accused must be informed of his constitutional right not to incriminate himself before he can be interrogated by police officers.[1] In *Holt v. State*[2] this court stated, ". . . that failure to do so will not render the product of the interrogation inadmissible unless it appears that the defendant by reason of his education, intelligence, or other circumstances has been imposed upon."

In the instant case petitioner was thirty-five years old, his education had extended into the seventh grade, and he had worked as an auto mechanic and welder. Petitioner also had a prior criminal record, and Officer Keitel testified that on other occasions when petitioner had been in police custody he had been uncooperative.

Judge SCHLICHTING made no finding on whether the police did inform petitioner of his right not to incriminate himself. However, the judge did find that petitioner's counsel, Mr. Fessler, failed to object to any statements allegedly made by petitioner because counsel considered that petitioner voluntarily made such statements. This finding is expressly borne out by Mr. Fessler's testimony at the hearing that he did not object because he felt any statements made by petitioner were voluntary. Through-

---

[1] *Harris v. State* (1966), 29 Wis. (2d) 479, 485, 138 N. W. (2d) 745; *Browne v. State* (1964), 24 Wis. (2d) 491, 511g, 129 N. W. (2d) 175, 131 N. W. (2d) 169; *Holt v. State* (1962), 17 Wis. (2d) 468, 479, 117 N. W. (2d) 626; *State v. Bronston* (1959), 7 Wis. (2d) 627, 641, 97 N. W. (2d) 504, 98 N. W. (2d) 468.

[2] *Supra,* footnote 1, at page 480.

out the entire proceedings there was not one instance where petitioner's counsel, or petitioner himself, ever alleged that statements were coercively elicited from petitioner.

In considering the above totality of circumstances it does not appear that petitioner was imposed upon by reason of his intelligence, education, or other circumstances. It therefore follows that petitioner's constitutional rights were not violated by the alleged failure of the police to inform him of the right not to incriminate himself.

### *Holding incommunicado and deprivation of right to consult counsel.*

Petitioner was arrested without a warrant at 9:55 a. m. on March 7, 1961, but a warrant was not issued until 5 p. m. on March 9, fifty-five hours after his arrest. Petitioner was then first taken before a magistrate at 10 a. m. on March 10. Petitioner was in police custody from the time of his arrest until his appearance before the magistrate.

Attorney Jacob Fessler, retained by petitioner's mother, first appeared at the police station at 9 a. m. on March 9, 1961, and requested to see petitioner. Officer Frank requested that Fessler leave and come back later that afternoon. After some discussion Fessler left and did not return until 1:30 p. m. that afternoon.

Certain statements made by petitioner during his interrogation while held in custody prior to the issuance of a warrant were offered at the trial and received in evidence without objection by petitioner's counsel. Petitioner at no time admitted the crime with which he was charged. In the subsequent hearing before Judge SCHLICHTING on the petition for *habeas corpus,* Attorney Fessler testified that he did not object to the testimony of petitioner's statements because he felt petitioner made them "voluntarily." In relation to the particularly dam-

aging testimony concerning the weapon used in the murder Fessler stated he did not object because he was taken by surprise.

Judge SCHLICHTING made this finding with respect to the failure of Fessler to object to the admissibility of petitioner's admissions:

"That the reason why counsel for petitioner did not request any preliminary hearing on the admissibility of petitioner's admissions or object to them was that he 'felt that any statements that petitioner had made to the police department were voluntary;' that no objection was made to the testimony of Officer Zindar that when he informed petitioner 'that we felt we had the weapon which was connected with Mrs. Bruss' death' found in petitioner's yard, petitioner replied, 'There are a lot of bricks in my yard.' It was the strategy of defense counsel to attempt to establish that petitioner had previously been informed that the weapon was a brick, and to deny that the statement was in fact made, although defense counsel was unaware that the testimony of Officer Zindar would be given in the words and form that it was given at the trial and such strategy was developed after Officer Zindar's testimony was given."

Judge SCHLICHTING also made these findings bearing on the issues of deprivation to right to counsel, and being held incommunicado:

"That while in custody and under interrogation petitioner was aware of his right to counsel but made no effort to contact a lawyer, nor did he request permission to do so or to use the telephone for any purpose; that if he had requested to use the telephone, permission would have been granted; that all statements of petitioner used in evidence against him were made before Attorney Fessler called at the jail for the purpose of interviewing petitioner on the morning of March 9, 1961; that on said occasion Officer Oakley Frank of the Sheboygan Police Department requested that he delay his visit until about noon, to which Mr. Fessler replied that he 'should like to see Mr. Van Ermen then;' that Mr. Fessler did not acquiesce in not seeing Mr. Van Ermen, but when his request was not granted he left and returned to the jail that afternoon where he did then see and confer with

Mr. Van Ermen; that petitioner had not requested an opportunity to consult Attorney Fessler nor had petitioner retained Attorney Fessler; that Mr. Fessler was retained by petitioner's mother, Mrs. Alyce Hanson.

"That while petitioner was in custody from March 7 to 9, 1961, he was not being held incommunicado; that no police officer informed petitioner that he could not speak to anyone on orders of the district attorney; that the district attorney had not given any such order to anyone in the police department; that petitioner's request to confer with his former wife, Mrs. Marian Kimme, was granted, but Mrs. Kimme had left the police department, where she had been earlier, and when informed of this fact petitioner withdrew his request."

Petitioner himself testified that he requested to see an attorney, but this request was denied. Certain discussions testified to by the officers indicate that petitioner and the officers discussed his need for an attorney. Officers Zindar and Keitel testified that upon first picking up petitioner on March 7, he asked them if he would need an attorney and they stated he should probably have one. Officer Zindar testified as follows:

"*Q.* You do admit that upon first taking Mr. Van Ermen into custody he did express an interest or question you concerning the advisability of seeing an attorney? *A.* Yes, he did.

"*Q.* So that right from the outset he did have the question of attorney on his mind? *A.* He probably did, ya."

All of the officers and the district attorney also stated that when they asked petitioner if he would be willing to submit to a lie-detector test, he stated he wanted to see an attorney before so doing.

In *Neuenfeldt v. State* [3] this court re-examined its interpretation of *Escobedo v. Illinois* [4] and confined it to its facts, holding that an accused's constitutional rights are only violated if he requests counsel and this request is denied. However, in *Neuenfeldt* this court made it

[3] (1965), 29 Wis. (2d) 20, 138 N. W. (2d) 252.
[4] (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. (2d) 977.

clear that the accused need not make a formal demand for counsel for his right to arise. What is required was described in the following language:

> "Such a request, however, need not be a formal one, but the desire to seek or have the advice of counsel must be communicated in some manner to him who has custody of the accused before it can be said there was a denial of counsel." [5]

While the record supports Judge SCHLICHTING'S finding that there was no formal demand or request to contact a lawyer, in view of the conversations between petitioner and the officers concerning his need for counsel, it appears clear that it was communicated to the officers that petitioner desired counsel.[6] The officers' reaction when Attorney Fessler requested to see petitioner is apparently indicative of their attitude throughout the entire fifty-one and one-half hours petitioner was without counsel. At the hearing Captain Frank gave the following reason for requesting Fessler to return at another time:

> "My business is a policeman and investigation, sir, to get the job done as I know it. I knew I couldn't do it if he did confer with an attorney."

Fessler testified that when Frank denied his request to see petitioner, Frank stated, ". . . don't give us a hard time." The testimony of Officer Frank and Fessler clearly indicates that the police were uncooperative. Be this as it may, we do not accord retrospective effect to

---

[5] *Supra*, footnote 3, at page 24.

[6] While not material to this proceeding we note that the 1961 legislature by ch. 107, Laws of 1961, enacted sec. 946.75, Stats., which became effective June 9, 1961, and provides, "Whoever shall, while holding another person in custody and if that person requests a named attorney, deny that other person his right to consult and be advised by an attorney at law at his own expense, whether or not such person is charged with a crime, may be fined not less than $100 nor more than $1,000 or imprisoned for not less than 10 days nor more than 6 months, or both."

the rule announced by the United States supreme court in *Escobedo v. Illinois* [7] in a proceeding such as this involving a collateral attack upon a judgment of conviction that has been finalized by expiration of the period available for prosecuting a writ of error or instituting an appeal. The recent holdings of the United States supreme court in *Linkletter v. Walker* [8] and *Tehan v. United States* [9] fortify us in this conclusion. As we interpret those decisions, the United States supreme court is not inclined to give retrospective effect to a newly announced rule affecting constitutional rights of persons convicted of crime where the practice condemned is not one which is likely to cause an innocent defendant to be found guilty. Here the failure of the police to accord defendant the right to confer with counsel had no effect on his subsequent conviction by the jury.

The majority of the courts which have heretofore passed on the retrospectivity of the rule in *Escobedo v. Illinois* have held it not to be retrospective. [10]

[7] *Supra*, footnote 4.

[8] (1965), 381 U. S. 618, 85 Sup. Ct. 1731, 14 L. Ed. (2d) 601.

[9] (1966), 382 U. S. 406, 86 Sup. Ct. 459, 15 L. Ed. (2d) 453.

[10] *United States ex rel. Walden v. Pate* (7th Cir. 1965), 350 Fed. (2d) 240; *Ruark v. People* (Colo. 1965), 405 Pac. (2d) 751; *In re Lopez* (1965), 62 Cal. (2d) 368, 42 Cal. Rptr. 188, 398 Pac. (2d) 380; *State v. Johnson* (1965), 43 N. J. 572, 206 Atl. (2d) 737; *United States ex rel. Conroy v. Pate* (D. C. Ill. 1965), 240 Fed. Supp. 237; *Commonwealth v. Negri* (1965), 419 Pa. 117, 213 Atl. (2d) 670; *People v. Hovnanian* (1964), 22 App. Div. (2d) 686, 253 N. Y. Supp (2d) 241; *Hayes v. United States* (D. C. Mo. 1964), 236 Fed. Supp. 225 (affirmed by the 8th circuit in 347 Fed. (2d) at 668, but the court declined to discuss the retrospectivity issue); *Bell v. State* (Fla. App. 1965), 175 So. (2d) 80. Generally on the question of retrospectivity see Currier, Time and Change in Judge-Made Law: Prospective overruling, 51 Virginia Law Review (1965), 201; Bender, The Retroactive Effect of an Overruling Constitutional Decision: *Mapp v. Ohio*, 110 University of Pennsylvania Law Review (1962), 650; Mishkin, The High Court, The Great Writ, and The Due Process of Time and Law, 79 Harvard Law Review (1965), 56; Note, 71 Yale Law Journal (1962), 907.

*Length of time petitioner was held in custody before being charged.*

It is undisputed that after petitioner was placed in custody he was held fifty-one and one-half hours before being permitted to see Attorney Fessler, and fifty-five hours before the warrant was issued charging him with the crime. The warrant was issued so late on March 9th that we place no significance on the fact that he was not brought before a magistrate until the following morning.

In *McNabb v. United States* [11] the United States supreme court first enunciated the rule that a confession, although voluntary, can be excluded if made during an illegal detention due to failure to promptly bring a prisoner before a committing magistrate. However, the rule was not based on any constitutional right, but was applied as a federal criminal procedure rule. [12] In *State v. Bronston* [13] this court determined that the *McNabb* rule was confined to federal criminal prosecutions and was not a limitation imposed upon the states by the due-process clause of the Fourteenth amendment. [14] However, our language in the recent case of *Phillips v. State* [15] makes it clear that our attitude has changed concerning this issue. Although still adhering to the *Bronston* interpretation of *McNabb*, we stated that an unreasonable detention is a deprivation of liberty without due process of law in violation of the Fourteenth amendment:

[11] (1943), 318 U. S. 332, 63 Sup. Ct. 608, 87 L. Ed. 819.

[12] The rule and reasoning was reaffirmed and applied in *Mallory v. United States* (1957), 354 U. S. 449, 77 Sup. Ct. 1356, 1 L. Ed. (2d) 1479.

[13] *Supra*, footnote 1, at page 641.

[14] In accord are *Gallegos v. Nebraska* (1951), 342 U. S. 55, 63, 64, 72 Sup. Ct. 141, 96 L. Ed. 86; and *Culombe v. Connecticut* (1961), 367 U. S. 568, 600, 602, 81 Sup. Ct. 1860, 6 L. Ed. (2d) 1037.

[15] (1966), 29 Wis. (2d) 521, 139 N. W. (2d) 41.

"While the *McNabb-Mallory* rule makes it improper to delay a suspect 'in order to carry out a process of inquiry which lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt,' the due-process clause does not foreclose completely the police from interrogating the person after arrest and before taking him before a magistrate. *But, the right to interrogate after arrest is limited and must be for the purpose of determining whether to release the suspect or if he has been arrested without a warrant to make a formal complaint.* An arrest upon warrant would seem to presuppose sufficient evidence and its purpose is to cause the arrested person to be brought before a magistrate, sec. 954.04, Stats., so that the criminal process of determining guilt or innocence can commence. *A detention for a period longer than is reasonably necessary for such limited purpose violates due process and renders inadmissible any confession obtained during the unreasonable period of the detention.*" (Emphasis supplied.) [16]

We condemn as unreasonable the long period of detention of petitioner before being charged. However, petitioner has raised no question as to the voluntariness of his statements. In a collateral attack proceeding such as this we do not accord retrospective effect to the holding in *Phillips* that a voluntary confession obtained during the unreasonable period of detention is inadmissible in evidence. Accordingly that holding is not applicable to petitioner in the instant case.

It may be arguable that in order to prevent a pattern of police practice involving unreasonable lengths of detention, the court should order the absolute discharge of prisoners who have been so detained, whether or not a confession was obtained during the extended detention. We, however, reserve such question for further examination in a proper case where the issue of unlawful detention was timely raised during the course of trial.

The findings of the circuit court are confirmed and the petition for *habeas corpus* is denied.

---

[16] Id. at pages 534, 535.