**Richard Lee BALDWIN, Petitioner,**

v.

**Andrew LEWIS, Acting Superintendent of Milwaukee County Detention Home, Respondent.**

**No. 69-C-230.**

United States District Court
E. D. Wisconsin.

June 24, 1969.

---

**1222**

E. Michael McCann, Dist. Atty., Milwaukee, Wis., for respondent.

Robert H. Friebert, Milwaukee, Wis., for petitioner.

## OPINION

REYNOLDS, District Judge.

On May 6, 1969, Richard Lee Baldwin, a juvenile, petitioned this court for a writ of habeas corpus pursuant to § 2241 et seq.[1] of Title 28, United States Code of Laws. Because the petition raised substantial constitutional questions, a response was ordered from the defendant, Andrew Lewis, on May 9, 1969. A hearing was set for May 13, 1969. The

---

1. 28 U.S.C. § 2241 provides in relevant part as follows:

"(a) Writs of habeas corpus may be granted by * * * the district courts * * *.

* * * * *

"(c) The writ of habeas corpus shall not extend to a prisoner unless—

* * * * *

(3) He is in custody in violation of the Constitution or laws or treaties of the United States * * *."

In addition, 28 U.S.C. § 2254 provides in relevant part as follows:

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."

parties filed a stipulation of facts, and the hearing was held as scheduled on May 13, 1969.

On May 14, 1969, based on the entire record of the proceedings in the state courts and the matters presented to this court, I granted the writ of habeas corpus sought by the petitioner and ordered his release to the custody of his mother pending further disposition of the charges pending against him in the Children's Court of Milwaukee County. At that time, I indicated that an opinion setting forth the reasons for my decision would be filed at a later date.

The following opinion is issued to supplement and explain the basis for my order of May 14, 1969, granting the writ of habeas corpus and releasing the petitioner, Richard Lee Baldwin, to the custody of his mother.

The petitioner is a seventeen year old male Negro who, at the time this action was brought, was in the custody of Andrew Lewis, Acting Superintendent of the Milwaukee County Detention Center. The petitioner was being held at the Detention Center on suspicion of having committed arson. The petitioner's application for a writ of habeas corpus sought his discharge from such custody on the grounds that (1) his rights under the Fourth Amendment[2] to the United States Constitution had been denied to him in that he was being held in custody without benefit of a judicial determination of probable cause to believe that a crime had in fact been committed and, further, that he had in fact committed such crime; and (2) his rights under the Eighth Amendment[3] to the United States Constitution had been violated in that he had been denied admission to bail.

In addition, the entire record indicates to me that the petitioner's rights under the Fourteenth Amendment[4] to the United States Constitution may have been violated in that petitioner was incarcerated and kept incarcerated without benefit of due process of law. In fact, consideration of the facts which form the basis for the two grounds alleged by the petitioner has led me to the conclusion that the overriding issue may be whether the petitioner has in fact been accorded due process of law. Before reaching these constitutional issues, however, I feel that a detailed statement of the facts in this matter is necessary.

## FACTS

On March 27, 1969, a fire occurred on the stage of the auditorium of the North Division High School in Milwaukee. Subsequent fire department investigation revealed that the likely cause of the fire was arson. As a result of the statements of two witnesses and an alleged accomplice who implicated the petitioner in the suspected arson, the petitioner was taken into custody by the Milwaukee Police Department on April 22, 1969.

Petitioner was taken to the Children's Court Detention Center where a "Detention Authorization" form was filled out.[5]

2. The Fourth Amendment to the United States Constitution provides:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

3. The Eighth Amendment to the United States Constitution provides:
"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

4. The Fourteenth Amendment to the United States Constitution provides in relevant part as follows:
"Section 1. * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

5. The "Detention Authorization" form was signed by one Carol J. Topell who is identified only as "worker," and it purports to authorize the holding of Richard Lee Baldwin. This document is identified

This form contains numerous printed reasons for detention, and in the normal course one of these is checked as the cause for holding the particular juvenile involved. In the petitioner's case, however, no reason for detention was indicated.

On April 23, 1969, at about 8:30 a. m., and prior to the time his mother arrived at the Detention Center, petitioner appeared before Lawrence J. James, Jr., a social worker who has been designated by the Children's Court to determine whether a particular juvenile will be detained at the Center. Mr. James ordered that the petitioner be held in detention without bail and proceeded to execute a "Detention Authorization" form [6] identical to that executed the preceding day, except that Mr. James checked the printed reasons for detention as:

> "It is reasonably believed that a child has committed an act which if committed by an adult would be a felony" and

> "The child is almost certain to commit an offense dangerous to himself or the community before the court disposition or transfer to an institution or another jurisdiction."

There is nothing in the record which indicates the facts upon which Mr. James based the above conclusions.

On April 25, 1969, there was a "rehearing" on the order for detention before the Honorable John F. Foley of the County Court, Children's Division (hereinafter "Children's Court"). On that occasion it was held that the petitioner should be held without bail.

It is not clear from the record of this Children's Court hearing whether Richard Baldwin was present. The record does indicate, however, that Attorney Robert Friebert appeared on behalf of Richard Baldwin and that Mrs. Celeste Baldwin, his mother, was also present. In addition, Mr. James and Mr. David Berman, an Assistant District Attorney, were present.

At the outset of the hearing, the petitioner's attorney objected to the manner in which the arrest had occurred. Mr. Friebert argued that since more than a month had elapsed between the time of the alleged arson and the petitioner's arrest, there should have been some sort of judicial determination of probable cause prior to the petitioner's arrest. At this point, the court inquired as to whether counsel was requesting a preliminary hearing. Counsel responded that he was not requesting a preliminary hearing but rather a discharge of the petitioner due to the failure of the Milwaukee Police Department to obtain any judicial determination of probable cause prior to petitioner's arrest. The court then requested that this issue be presented on written motion and reserved determination of the issue on its merits.

The court stated that the only matter to be considered at the April 25, 1969, hearing was whether the petitioner should be detained pending further proceedings. Petitioner's counsel proceeded to make a lengthy argument as to why the petitioner should be released pending further proceedings. He indicated that the petitioner had been attending school regularly, took additional classes in auto mechanics, and held a part-time job at the Veterans Administration. Counsel also informed the court that Mrs. Baldwin had just moved to her present home in the last four months, but that prior to that she had lived in the same place for three years and prior to that had lived nine years in one location. Counsel indicated that both Mrs. Baldwin and petitioner had lived in Milwaukee all their lives and, further, that the assistance of the petitioner was necessary to the preparation of a defense to the charges against him, especially in regard to the locating of witnesses. In conclusion, counsel requested that the petitioner be released to the custody of

in the record as Circuit Court Exhibit No. 2.

6. This document is identified in the record as Circuit Court Exhibit No. 1.

his mother without bail or, in the alternative, that the court set bail if the court felt there was some likelihood that the petitioner would not appear at further proceedings.

The Children's Court then asked Mr. James for the recommendation of the probation department. Mr. James stated that in view of the fact that the fire which the petitioner was charged with having set had occurred in a public school, "it would represent a clear and present danger to the community to release the boy." Mr. James also stated that the police report indicated that there were three eye witnesses to the petitioner's having started the fire. However, no report of any sort was introduced and, consequently, none appears in the formal record.[7]

Following Mr. James' recommendation, the Assistant District Attorney presented the position of the State. Because of the seriousness of the crime charged, the State concurred with the recommendation of the probation department. The State argued that the petitioner's denial of the charge was but a self-serving statement which should have no bearing whatsoever in a detention hearing. The State contended that release of the petitioner in order to aid in the preparation of his defense was not a basis for release under the Children's Code. The State also pointed out that under its interpretation of the Children's Code, there was no provision for bail and further urged that if this interpretation of the Children's Code were to be overturned, such action should be taken only by an appellate court. The State also argued that bail should not be allowed because the petitioner was not charged with a crime in the technical sense and, further, because the petitioner was under the legal age to enter a valid contract and therefore unable to contract for bail.

The court concluded the hearing by denying the motion for bail on the grounds that In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), was silent with respect to the issue of bail and, furthermore, because a provision for bail had been removed from the Wisconsin Children's Code in 1956. In addition, the Children's Court stated that "with respect to the detention of the juvenile, the Court does feel that it would be in the best interests of the juvenile and the community that the boy be detained. The Court will order that the boy be detained pending further proceedings in this matter."

The document ordering detention after this hearing was the same type of "Detention Authorization" form previously used.[8] It was signed by both Mr. James and Judge John F. Foley. This form indicates, however, that "upon referral of rehearing" detention was ordered because "the child is almost certain to commit an offense dangerous to himself or the community before the court disposition or transfer to an institution or another jurisdiction." Again, the record is completely barren of facts upon which this conclusion could have been based. In the transcript of the April 25,

7. When I refer to the "record," I am referring to the formal record made in the State court proceedings. The State court transcripts indicate that the probation department handed several unidentified documents to the court in each of the State court hearings. Because these documents were never identified in the record, I have encountered some difficulty in determining just what was in fact presented to the State courts. The law is clear that I am to be guided in my review of State court action by the record actually made in the State court.

At and before the hearing in this court, the District Attorney's office and the probation department also deposited voluminous files for my consideration. I have no way of determining whether these files were in fact the same as those presented to the State courts. The great bulk of these files, however, deal not with the petitioner but rather with other members of his family. With regard to the petitioner, however, the files do indicate that he was placed under supervision in March 1969 for having hit another youth who had called him a "black S.O.B."

8. This document is identified in the record as Circuit Court Exhibit No. 3.

1969, hearing, there is no indication of any exhibits having been offered or received in evidence and no testimony was taken.

On the following day, April 26, 1969, a petition for a writ of habeas corpus was filed in the Circuit Court of Milwaukee County, Judge Leander J. Foley, Jr., presiding. A hearing was held on April 28 and 29, 1969, pursuant to the petition. The Circuit Court determined that the detention hearing held in the Children's Court was not properly conducted and that a new detention hearing was required. The Circuit Court then assumed plenary powers as a court hearing a petition for writ of habeas corpus and conducted a detention hearing. The Circuit Court concluded after the hearing that the State was not obliged to show that there was probable cause to believe that a crime had been committed and, further, that there was no obligation to show probable cause to believe that the petitioner had committed an act which would have been a crime had he been an adult, because the Wisconsin Statutes do not contain such a requirement. The Circuit Court held that Chapter 48 of the Wisconsin Statutes (the Children's Code) had been complied with by the Milwaukee Police Department and by the Children's Court with respect to the initial arrest and detention of the petitioner. The Circuit Court also ordered that the petitioner be held in detention without right to bail.

The details of this Circuit Court proceeding are as follows:

The hearing began on the morning of April 28, 1969. There appears to have been some confusion as to physically producing the petitioner, but all parties agreed to consider him present, and at least by the second day of the hearing he was in fact in the courtroom. Attorney Robert Friebert again appeared on behalf of the petitioner, and Assistant District Attorney David Berman appeared on behalf of the respondent. Mr. Lawrence James and Mrs. Baldwin, petitioner's mother, were also present.

At the opening of the hearing, the Court ordered the State to produce documents that would show why petitioner had been detained. The State presented three copies of the "Detention Authorization" forms which have previously been described. These were received as Exhibits 1, 2, and 3.

The State made a statement summarizing the procedure used in detaining a juvenile prior to court determination of the charge against the youth. Mr. Berman indicated that (1) after the police have arrested a juvenile, he is brought to the Detention Center at the Children's Court; (2) at the Center, a probation officer and/or Mr. James determine whether or not the youth should be detained (Mr. James, it appears, has been given this authority by the Children's Court); and (3) if there is a request for review of the decision, the youth then comes before the regular Children's Court Judge for a hearing on the question of detention. The State informed the Court that all of these procedures had been followed in the detention of the petitioner. The State argued that the decision reached by the Children's Court was correct because (1) the alleged crime was serious, and (2) if the petitioner remained in detention, he would have an extremely speedy trial—in no more than three to four weeks.

Petitioner's counsel argued that the reason for detention checked on the "Detention Authorization" forms was not the reason for detention stated at the close of the previous hearing. The Circuit Court then adjourned the hearing until the next day in order to obtain a transcript of the Children's Court hearing.

When the hearing resumed on April 29, 1969, the Assistant District Attorney elaborated upon his statement of the general procedure for detention. He went to great length to indicate that the District Attorney's office was not involved in the initial detention decision and became involved only if a "rehearing" before the Children's Court was

requested. He emphasized, however, that the appearance of an Assistant District Attorney at that point was only as legal spokesman for the probation department and not as a representative of the District Attorney's office.

It was agreed by all counsel that the facts alleged in the habeas corpus petition before the Circuit Court were not in dispute. Essentially counsel agreed that (1) there had been no judicial process or order authorizing the arrest of petitioner, (2) a hearing on detention had been held, and (3) no bail had been allowed. Arguments of counsel as to the law in relation to the agreed facts were made.

The Circuit Court ruled that the law of Wisconsin [9] requires that a child taken into custody *must* be returned to the custody of his parents unless there is "a finding that these parents or guardian are incapable under the circumstances to care for the child. That means care in the full sense." The Court further concluded that in order to satisfy the requirements of law, the following steps are necessary:

"\* \* \* A Court must make an inquiry on a record in a properly constituted hearing within a reasonable time from the time of the detention under 48.28 \* \* \* it is the obligation of the person who contends that the child should be detained to show to the Court that the parents of the child have no ability to provide shelter, protection and control of the juvenile. The Court could also consider the nature and the gravity of the alleged crime which has been committed or the allegations of jurisdiction, such as habitual truant, failure to be controlled by his parents or guardian or whatever the basis of the ultimate petition may be. The Court should and must consider any previous contact that the Court had with this juvenile, such as a juvenile record, whether he is under probation, how he acted on probation, because these indicate the ability of the parent to control the juvenile."

The Circuit Court ruled that the previous hearing in the Children's Court failed to satisfy the requirements of due process because the record did not contain facts to support the conclusion reached. The Circuit Court and counsel concurred that the Circuit Court, sitting for a matter of habeas corpus, had the authority to hold a detention hearing *de novo* in lieu of remanding it to the Children's Court for a new hearing. Before the *de novo* detention hearing began, however, the Circuit Court Judge informed all parties that he and Mr. James, the probation officer, were first cousins and "very very close personal

9. Section 48.29, Wis.Stats.(1967), provides as follows:

"(1) When a child is taken into custody as provided in s. 48.28, the parent, guardian or legal custodian of the child shall be notified as soon as possible. The person taking the child into custody shall, unless it is impracticable, undesirable, or has been otherwise ordered by the court, return the child to his parent, guardian or legal custodian on the promise of such person to bring the child to the court, if necessary, at a stated time or at such time as the court may direct. If the person taking the child into custody believes it desirable, he may request such parent, guardian or legal custodian to sign a written promise to bring the child to court as provided above.

"(2) If the child is not released as provided in sub. (1), he may be detained in a place of detention specified in s. 48.30 but only on written order of the court specifying the reason for detention. The parent, guardian or legal custodian of the child shall be notified of the place of detention as soon as possible. If because of the unreasonableness of the hour or the fact that it is a Sunday or holiday it is impractical to obtain a written order from the court, the child may be detained without a written order of the court for a period of not to exceed 24 hours but a written record of such detention shall be kept and a report in writing filed with the court. The judge of the juvenile court may authorize any person, designated by s. 48.06 or 48.07 to provide services for the court, to order detention of the child."

friends." Petitioner's counsel indicated he had no objection to this development and had no desire to have the case transferred to another Circuit Court Judge.

Mr. James was the first witness sworn, and he testified as to his experience as a probation officer and as "detention magistrate." He stated that he had been participating in detention hearings on a regular basis since the end of August 1967; that he based his detention decision on the police complaint, the court record of the petitioner as contained in the records of the Children's Court Center, and a talk with the petitioner. The records of the Children's Court Center which pertained to petitioner were not made an exhibit [10] nor were they made available to defense counsel, but they were handed to the judge by Mr. James. After the Court had examined the file, Judge Foley stated:

"There are seven children of this, in this marriage, the one, the oldest one was born in 1950, Kenneth and the youngest one is Michael born in 1958. The father and mother are divorced. The juvenile record of the family consists of three pages of citations, some of which are information matters in which there were no findings, actual findings by a Court.

"All right, the Court has looked at the record."

Mr. James then asserted that he made a decision concerning detention "based on the record that the Court has just perused." Mr. James determined that petitioner "in his best interest should be held until the Court hearing in that he was almost certain to commit an offense dangerous to himself or the community before the Court disposition or transferred (sic) to an institution or other jurisdiction."

Petitioner's counsel called the petitioner's mother who testified that she had lived at one Milwaukee address for nine years, at the next for three years, and at the present home for almost four months. She testified that the petitioner was born in Milwaukee, has always lived here, works fifteen hours a week at Veterans Hospital, and goes to school in the morning and to a special class in auto mechanics in the afternoon. Mrs. Baldwin testified that she had been given no notice of the original detention hearing, but had been told that the first hearing would be April 28, 1969. Mrs. Baldwin further stated that she had not had, and did not anticipate having, any difficulties controlling petitioner. When asked whether she could "guarantee to the Court that if the youngster was returned to your home he would not abscond from the community, he would not leave your home from the community or commit some other crime," she replied affirmatively.

The Court had a brief conversation with the petitioner, dealing with such subjects as his studies in school and the type of work he was doing at the Veterans Hospital. The attorneys argued the merits of further detention, and petitioner's counsel again objected to the failure of the Milwaukee police to have obtained a judicial determination of

10. The Circuit Court twice indicates in the transcript that the Children's Court record was marked "Exhibit one" and introduced. In the record presently before this court, however, Exhibit one is the "Detention Authorization" form dealing with petitioner and referred to earlier in this opinion. There is no file of any sort marked as an exhibit. Consequently, this court has no way of knowing what the Circuit Court Judge actually read and referred to. As indicated before, a file relating to the petitioner was shown to this court by the Assistant District Attorney and another file dealing with the Baldwin family was given to this court by the probation officer, Mr. James. Either or both of these might have been considered by the Circuit Court; likewise, that court may have been referring to an entirely different file. The record provides no way of knowing what documents were referred to by the Circuit Court. Since the State court record must be the basis for the decision of this court, I can consider only those facts which appear in the record as the bases for the State court decisions.

probable cause for arrest prior to the petitioner's actual arrest.

The Circuit Court ruled that the provisions of the Children's Code did not necessitate a finding of probable cause, that the statutes had been complied with in this case, and noted that a delinquency petition had been filed as required by statute. The Court found:

"* * * that there is cause for the further detention of this youth, pending a hearing of this juvenile, pending a hearing. In view of that, the nature of the offense, in view of the family record, in view of the fact that he is under supervision at this time for a previous act or activity and the Court, therefore, will continue his detention * * *."

In addition, the court ruled that the petitioner was not entitled to bail.

On May 5, 1969, a petition for leave to commence an original action for writ of habeas corpus was filed with the Wisconsin Supreme Court. The following day, the clerk of the Wisconsin Supreme Court sent petitioner's counsel a standard form postcard which stated:

"I have received and submitted to the Court your petition for habeas corpus.

"The Court has a large volume of such matters, which are handled in addition to the normal calendar cases. I cannot, therefore, predict when the Court will announce a decision in your matter. I will notify you immediately when such an announcement is made."

■ As there was no way for petitioner or his counsel to tell when or even if the Wisconsin Supreme Court would act on this petition, I find that under the circumstances the State corrective process was ineffective to protect the rights of petitioner as required by 28 U.S.C. § 2254. Consequently, the matters presented to this court in the petition for writ of habeas corpus are ready for decision.

## MUST PROBABLE CAUSE EXIST BEFORE A JUVENILE MAY BE TAKEN INTO CUSTODY ON SUSPICION OF HAVING COMMITTED A VIOLATION OF LAW WHICH WOULD CONSTITUTE A CRIME IF COMMITTED BY AN ADULT?[11]

The Fourth Amendment of the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

■■ As the United States Supreme Court has interpreted this amendment, it requires that a person may be validly arrested only if there is probable cause to believe that a crime has been committed and that the person to be arrested has committed such crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). While the Fourth Amendment is a limitation upon the powers of the Federal Government only, it is well settled that the prohibition of the Fourth Amendment against unreasonable arrest is enforceable against the states through the due process clause of the Fourteenth Amendment; hence, a state has no power to sanction arrests prohibited by the Fourth Amendment. Recznik v. City of Lorain, 393 U.S. 166, 89 S.Ct. 342, 21 L.Ed.2d 317 (1968);

11. This opinion is directed only to the issue of the circumstances under which the police may take into custody a juvenile who is suspected of having committed an act which would have been a crime had such act been committed by an adult. I am in no way expressing any opinion on the power of the police to take juveniles into custody under other circumstances, such as when a juvenile of tender years is taken into custody for his own safety.

Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); Beck v. Ohio, supra; Wong Sun v. United States, supra; Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Giordenello v. United States, supra; Browne v. State, 24 Wis.2d 491, 129 N.W. 2d 175, 131 N.W.2d 169 (1964).[12]

The State contends, however, that the Fourth Amendment requirement that an arrest be based upon "probable cause" does not apply to a juvenile taken into custody and held in detention pursuant to § 48.28 of the Wisconsin Children's Code. It is the State's contention that such a juvenile has technically never been placed under arrest. Subsection (2) of § 48.28 of the Children's Code specifically states that "Taking into custody under this section shall not be considered an arrest."

■ It is my opinion, however, that when the petitioner was taken into custody by the Milwaukee Police Department, he was clearly subjected to a "seizure" or arrest within the meaning of the Fourth Amendment. Perhaps the most concise statement of what constitutes such a seizure was made by the Ninth Circuit Court of Appeals in Gilbert v. United States, 366 F.2d 923, 928 (1966), in which the court made it clear that "any official exertion of custody over the person is a 'seizure' within the meaning of the Fourth Amendment, and may be sustained only if not 'unreasonable' under the circumstances."

According to the record, the petitioner is before the Children's Court because he is suspected of having committed an act which would be considered a crime if committed by an adult. Pursuant to such allegation, he was taken into custody and deprived of his liberty under authority of law.

It is the view of this court that when Richard Baldwin was taken into custody by the Milwaukee Police Department, placed in the Milwaukee County Detention Center, and not allowed to leave the Detention Center on order of persons acting under authority of State statute, his liberty was clearly restrained by the State regardless of the name the State chooses to apply to his seizure and subsequent detention. Consequently, in my opinion, the probable cause requirement of the Fourth Amendment does apply to the present case.

## MUST THE DETERMINATION OF PROBABLE CAUSE BE MADE BY A JUDICIAL OFFICER PRIOR TO ARREST?

■ The Fourth Amendment requirement of probable cause for arrest does not necessarily require that an arrest warrant be obtained. An arrest can be validly effected without an arrest warrant or any prior judicial determination of probable cause if the officer making the arrest, at the time of the arrest, had knowledge of facts sufficient to establish probable cause. Beck v. Ohio, supra; Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1952); State v. Phillips, 262 Wis. 303, 55 N.W.2d 384 (1952).

## DID THE OFFICERS AT THE TIME OF THE ARREST HAVE KNOWLEDGE OF FACTS SUFFICIENT TO ESTABLISH PROBABLE CAUSE?

It therefore becomes the duty of this court to determine whether the facts

12. It is interesting to note that § 11 of Article I of the Wisconsin Constitution is substantially like the Fourth Amendment to the United States Constitution. The Wisconsin Supreme Court has held that the standards surrounding the Fourth Amendment are generally applicable to the construction of § 11 and, further, that a finding of probable cause under federal standards will normally result in a finding of probable cause under State standards. Browne v. State, 24 Wis.2d 491, 129 N.W. 2d 175, 131 N.W.2d 169 (1964).

available to the officers at the moment of arrest would "warrant a man of reasonable caution in the belief" that an offense had been committed and that the petitioner had committed the offense. Carroll v. United States, supra, 267 U.S. at 162, 45 S.Ct. at 288.

The juvenile report of the Milwaukee Police Department (one of the voluminous records deposited with this court) indicates that the Fire Department's 6th Batallion Chief, Clarence Rydlewicz, found that the fire at the North Division High School "was set by unknown means of arson." The report indicates that as a result of this finding and on the basis of statements received from two eyewitnesses and an alleged accomplice, the petitioner was taken into custory. The report further indicates that the two eyewitnesses are teachers at the North Division High School who observed the petitioner and another youth on the high school stage in the area where the fire broke out. They then observed the petitioner and the other youth run from the stage as the fire developed. The other youth, who is referred to as an "associate or accomplice" in the report, indicated to the police officers that the petitioner had started the fire.

■ While the credibility of the "associate or accomplice's" testimony may be questioned, it appears to me that the information which the officers received from the teachers is sufficiently reliable and definite to constitute probable cause for taking the petitioner into custody. I find that this information, coupled with the finding of the Fire Department investigation as to the cause of the fire, amounted to facts available to the officers at the moment of the arrest which would warrant a man of reasonable caution in the belief that an offense had been committed and that the petitioner had committed the offense. I therefore am of the opinion that the petitioner's arrest was validly effected and was not accomplished in violation of his Fourth Amendment rights.

The petitioner contends, however, that aside from the issue of whether the officers had probable cause to take him into custody, his arrest is invalid because approximately twenty-five days had elapsed between the fire and his arrest, and that under such circumstances the Fourth Amendment requires that the arresting officers first obtain an arrest warrant.

■ The record indicates that the fire at the North Division High School occurred on March 27, 1969, and that the petitioner was taken into custody on April 22, 1969. The record does not indicate, however, the point in time at which the police first obtained evidence sufficient to warrant taking the defendant into custody. If this evidence was obtained shortly after the fire, it would appear to me that the police should have obtained a warrant prior to the petitioner's arrest. If, on the other hand, the police did not obtain information constituting probable cause to arrest the petitioner until shortly before he was taken into custody, the police were justified in promptly taking him into custody if they thought such action was necessary to protect the interests of the school. But in light of the fact that there is no evidence as to when the officers did obtain probable cause to pick up the defendant, and in as much as they did in fact have such probable cause, I am not prepared to hold that under these circumstances the failure of the police to obtain a warrant requires that the petitioner's arrest be held invalid.

WAS THE PETITIONER ENTITLED TO A HEARING ON THE EXISTENCE OF PROBABLE CAUSE FOR HIS CONTINUED DETENTION SUBSEQUENT TO HIS ARREST?

■ The standard which is to be applied in determining whether a juvenile is to be detained once he has been taken into custody is specifically set out in § 48.29 of the Wisconsin Statutes.[13] The

13. See text of § 48.29, Wis.Stats.(1967), cited in footnote 9, supra.

Circuit Court properly construed this statute as requiring that a juvenile *shall* be released to the custody of his parents *unless* "it is impracticable, undesirable, or has otherwise been ordered by the court." Thus, unless the State is able to establish that the child's parents or guardian is incapable under the circumstances to care for the child in every sense of the word, the child must be released to the custody of his parents or guardian.

■ A detention hearing held pursuant to § 48.29 is, by its very nature, a proceeding which may result in the deprivation of a juvenile's liberty for an indeterminate period of time pending disposition of the accusations against him. It is the opinion of this Court that a logical interpretation of the Supreme Court's decision in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), requires that such a hearing satisfy all the requirements of due process under the Fourteenth Amendment.

■ The Circuit Court interpreted § 48.29 as not requiring the State to show probable cause that the petitioner committed an act which would have been a crime had he been an adult, or even that such a crime was in fact committed. It is my opinion that such an interpretation is not consistent with the requirements of due process as guaranteed to the defendant by the Fourteenth Amendment. Any person, regardless of age, who is detained on suspicion of criminal conduct, and thus deprived of his liberty, without a judicial determination of probable cause to believe that a crime has been committed and that he committed that crime, at any time prior to trial of the charges against him, is denied the very fundamental fairness which the Fourteenth Amendment is designed to protect.

In Phillips v. State, 29 Wis.2d 521, 139 N.W.2d 41 (1965), the Wisconsin Supreme Court held that detention without a determination of probable cause for a period longer than is reasonably necessary either (1) to determine whether to release the suspect, or (2) if he has been arrested without a warrant, to make a formal complaint, is a deprivation of liberty without due process of law in violation of the Fourteenth Amendment. See State ex rel. Van Ermen v. Burke, 30 Wis.2d 324, 140 N.W.2d 737 (1965).

While I recognize that this holding involved an adult held on suspicion of having committed a criminal act, it is my opinion that a reading of In re Gault, supra, requires that the same standard be applied to a juvenile who is detained pending determination of the accusations against him.

■ Indeed, since the incarceration to which the petitioner was subjected occurred without any judicial determination of probable cause, and prior to any determination of guilt or innocence, the necessity for a judicial determination of probable cause during the detention hearing is even more glaring. Accordingly, it is my holding that in order to satisfy the constitutional requirements of due process, a detention hearing held pursuant to § 48.29 must include a determination as to whether there is probable cause to believe (1) that an act has been committed which if committed by an adult would be a crime, and (2) that the juvenile in custody has in fact committed such act.

■ With regard to the manner in which the detention hearing is actually conducted, In re Gault, supra, held that the constitutional right to counsel applies to juveniles who stand accused of an act which may result in their incarceration. The right to counsel is but a hollow right, however, if the court conducting the detention hearing may base its conclusion and order upon facts or documents which are never identified, made part of the record, or made available to counsel for inspection.

The transcripts of the hearings held in the State courts in this case in no way indicate that documents or files were considered by the court, nor do they

indicate that counsel for the petitioner was ever afforded an opportunity to examine the documents from which testimony was given or which were examined by the court.

Furthermore, due process requires that the court finding under § 48.-29 must be based upon an adequate record containing facts supporting the conclusion of the court. The record before this court, including the transcripts of the proceedings before the Children's Court and the Circuit Court, totally fails to support the conclusions reached by those courts. There is nothing in either of the records which would indicate that the petitioner's mother cannot control him or that his home environment is in any way unfit. The record is likewise barren of anything that would indicate that petitioner is not likely to appear at any further court proceedings, or that he is likely to harm himself or others prior to such further proceedings, or that would justify further detention under any criteria set forth in § 48.29.

Consequently, for all of the foregoing reasons, I found that the petitioner was denied due process of law, in violation of the Fourteenth Amendment, during his detention hearings before both the Children's Court and the Circuit Court, and that for this reason the petitioner's request for a writ of habeas corpus should be granted, and the petitioner was released to the custody of his mother pending further proceedings in the State courts.

## DOES THE PETITIONER HAVE A CONSTITUTIONAL RIGHT TO BAIL?

Petitioner contends that the refusal of the State courts to admit him to bail is a violation of his rights under the Eighth Amendment to the United States Constitution. I find it unnecessary to reach the question of whether there is a "constitutional right to bail" in juvenile proceedings, because I believe that the Wisconsin Children's Code, when applied consistent with the aforementioned requirements of due process, provides an adequate substitute for bail.

The Wisconsin Children's Code, specifically § 48.29, requires that a juvenile *shall* be released to the custody of his parents unless there is a finding that because of the circumstances, including the gravity of the alleged crime, the nature of the juvenile's home life, and the juvenile's previous contacts with the court, the parents or guardian of the juvenile are incapable under the circumstances to care for him. Only if such a finding is made may the juvenile be detained pending trial of the accusations against him. As I have already held, the hearing at which the question of detention of the juvenile is determined must satisfy the requirements of due process of law. When this is done, the interest of the juvenile is protected, and he is not subjected to the arbitrary confinement which the Eighth Amendment is designed to prohibit.

In so holding, my decision is in accord with the ruling of the Court of Appeals for the District of Columbia in Fulwood v. Stone, 129 U.S.App.D.C. 314, 394 F.2d 939 (1967). Faced with initial detention provisions very similar to those found in the Wisconsin Statutes, the court held that the D.C.Code, "if faithfully observed in practice," is "more than an adequate substitute for bail." Likewise, the Wisconsin Children's Code, when applied in a manner consistent with due process, affords a juvenile an adequate substitute for bail.

For the foregoing reasons, the petitioner, Richard Lee Baldwin, was ordered released to the custody of his mother pending further disposition of the charges pending against him in the State courts.